## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JACK STONE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 21-3244 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 7, 8, 11, 13, 14, |
| | : | | 17, 18, 22 |
| | : | | |
| UNITED STATES DEPARTMENT OF | : | | |
| STATE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

**DENYING PLAINTIFF'S MOTIONS PREDATING FINAL AGENCY ACTION AND FILING OF THE ADMINISTRATIVE RECORD; DENYING PLAINTIFF'S MOTIONS FOR LEAVE TO AMEND THE COMPLAINT; DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS**

## I.      INTRODUCTION

Plaintiff Jack Stone, proceeding *pro se*, claims that the United States Embassy in Tokyo

and the Department of State (collectively, "Defendants") have unlawfully refused to issue

citizenship and immigration documents that he requested for his two putative children and wife.

Following submission of his complaint in the instant matter on December 6, 2021, Plaintiff filed

a series of motions, "declarations," and other filings, some of which repeated Plaintiff's

challenges to Defendants' requirements for issuing those documents and his demands that

Defendants be compelled to provide the documents.  Others raised new claims and sought relief

not included in Plaintiff's complaint.  On February 4, 2022, Defendants filed a Motion to

Dismiss Complaint and Opposition to Plaintiff's Motions ("Motion to Dismiss").

Plaintiff and Defendants submitted the aforementioned filings prior to the Court's minute

order on April 18, 2022 construing one of Plaintiff's declarations as a motion to file a

supplemental pleading challenging Defendants' actions under the Administrative Procedure Act

1

("APA"), and prior to Defendants filing the administrative record on May 18, 2022.  The Court

will now construe Plaintiff's additional filings containing new claims and requests for relief as

motions for leave to amend the complaint.  However, the Court will also, for the reasons

explained below: (1) deny Plaintiff's premature motions predating Defendants' final agency

action and filing of the administrative record (ECF Nos. 7, 8, 11, 13, 17, 18, and 22); (2) deny

Plaintiff's motions for leave to amend the complaint; and (3) grant in part and deny in part

Defendants' Motion to Dismiss (ECF No. 14), without prejudice to the Court's consideration of

these motions on the merits as to the claims that remain live.  As Plaintiff's claims related to the

passports, Consular Report of Birth Abroad ("CRBA"), and Social Security number remain live

as described below, the Court will in a separate opinion rule on Defendants' Motion to Dismiss

or, in the Alternative, Motion for Summary Judgment (ECF No. 34) as to the merits of Plaintiff's

remaining claims.

## II.      BACKGROUND

The instant case comes to this Court with a complicated factual history that has been

recounted in part in this Court's opinions in Plaintiff's prior case, *Stone v. U.S. Embassy Tokyo*

("*Stone I*"), No. 19-3273, which arose out of facts and allegations overlapping substantially with

those here.  *See, e.g.*, *Stone v. U.S. Embassy Tokyo*, No. 19-3273, 2020 WL 4260711 (D.D.C.

July 24, 2020); *Stone v. U.S. Embassy Tokyo*, No. 19-3273, 2020 WL 6701078 (D.D.C. Nov. 12,

2020); *Stone v. U.S. Embassy Tokyo*, No. 19-3273, 2020 WL 6746925 (D.D.C. Nov. 16, 2020),

*aff'd*, No. 20-5360, 2021 WL 2255016 (D.C. Cir. May 17, 2021).  *Stone I*, the complaint for

which was filed in February 2019, concluded in April 2021.  The Court presumes familiarity

with those prior opinions and will describe only the facts and allegations relevant to the pending

filings at issue in this opinion.

On December 6, 2021, Plaintiff filed a complaint alleging that his wife, Miyuki Suzuki, had abducted his two putative children, M.S. and S.S., to an unknown location and that he had been unable to contact Ms. Suzuki since November 1, 2021.  Compl. ¶¶ 1, 3, ECF No. 1. Plaintiff alleges that Defendants' refusal to issue passports for the two children is in part "responsible for the current reabduction situation," *id.* ¶ 43, which has also prevented Plaintiff from being able to obtain a CRBA and Social Security number for S.S., *id.* ¶¶ 120–29. Plaintiff's complaint objects to Defendants' requirements for issuing the passports for M.S. and S.S. and the CRBA for S.S.—which Plaintiff has been unable to meet—as "arbitrary," *id.* ¶¶ 30, 126–28, and alleges that Defendants have arbitrarily delayed scheduling his wife's visa interview by, in part, providing a purportedly inaccessible web link for the application, *id.* ¶¶ 57–118. Plaintiff's complaint seeks an order compelling Defendants to: (1) issue passports for the two children, *id.* ¶¶ 52–54; (2) either issue a visa for his wife or schedule a "final interview" necessary for executing the visa application, *id.* at 1, ¶¶ 103, 118; and (3) waive the requirement that S.S. appear in person for an application for a CRBA and then issue said CRBA and a Social Security number for S.S. should Plaintiff be able to prove that S.S. satisfies the requirements for U.S. citizenship, *id.* at 17, ¶¶ 119–30.  Despite filing this complaint in December 2021, Plaintiff did not in fact execute the applications at issue in the instant matter, necessary for requesting a passport for M.S. and for a passport and CRBA for S.S., until January 13, 2022.  *See* Pl.'s Decl. Ex. A, ECF No. 29.

Over the next few months, Plaintiff then filed numerous motions, "declarations," and other documents, which the Court has sought to distill into comprehensible claims and requests for relief.  Some of these filings restate his complaint's claims and requests for relief regarding the passports, CRBA, Social Security number, and visa.  Others raise additional claims and seek

relief not previously included in Plaintiff's complaint.  First, Plaintiff challenges Defendants'
non-implementation of certain measures under the "Goldman Act"[1] against Japan and seeks a
writ of mandamus and injunctive relief compelling Defendants to implement those measures.
Pl.'s Suppl. Mem. (Mandamus) to Mot. to Compel 1, 4, ECF No. 12; Pl.'s Mot. for Mandamus
and Inj. Relief to Compel Goldman Act Sanctions 9, ECF No. 22.  Second, Plaintiff asks that the
Court "forward" the matter to the Attorney General and request that the Department of Justice
bring criminal charges against Plaintiff's wife, her parents, and a third party.  Pl.'s Mot. for
Court to Request the Dep't of Justice File Crim. Charges 7, ECF No. 17; Pl.'s Decl. 5–7, ECF
No. 6.  Third, Plaintiff seeks an order compelling Defendants to conduct welfare checks on the
two children.  Pl.'s Emer. Mot. to Compel Child Welfare Check 13, ECF No. 11; Pl.'s Emer.
Decl. 5, ECF No. 27.  Fourth, Plaintiff seeks an order compelling Defendants to engage Japan's
Central Authority and request that Japan issue a return order for one of Plaintiff's children under
the "Hague Convention."[2]  Pl.'s Emer. Mot. to Compel Defs. to Engage Japan's Central
Authorities 7, ECF No. 18.  Fifth, Plaintiff would have this Court compel that Yellow Notices be
issued for Plaintiff's wife and children, Pl.'s Emer. Mot. for Court to Order Interpol Yellow
Notice 3, ECF No. 13, or that the Federal Bureau of Investigation ("FBI") request that Interpol
issue such Yellow Notices, Pl.'s Decl. 3, 11, ECF No. 6.[3]  Sixth, and finally, Plaintiff also

---

[1] The Court understands Plaintiff to be referring to the Sean and David Goldman International Child Abduction
Prevention and Return Act of 2014, Pub. L. No. 113-150, 128 Stat. 1807.
[2] The Court understands Plaintiff to be referring to the Hague Convention on the Civil Aspects of International Child
Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89 (entered into force July 1, 1988).
[3] Plaintiff also filed a motion in *Stone I* on November 24, 2021 requesting that the Court issue an emergency order
compelling the FBI to "move" to have Interpol issue notices for Plaintiff's wife and children.  *Stone I*, 19-cv-3273
(D.D.C. Nov. 24, 2021), Mot. for Court to Order Emer. Interpol Yellow Notice 3, ECF No. 261.  Pursuant to the
Court's minute order on August 2, 2022, Plaintiff's motion was denied without prejudice to the Court's
consideration of the motion in the instant case.  In addressing Plaintiff's request here for the Court to compel the FBI
to request that Interpol request Yellow Notices, the Court's opinion here also addresses this motion from *Stone I*.

appears to raise a supplemental claim under the Federal Tort Claims Act ("FTCA") against the FBI.  Pl.'s Decl. 2, ECF No. 6.

On February 4, 2022, Defendants filed their Motion to Dismiss, contending that: (1) Plaintiff's claims regarding the passports, CRBA, Social Security number, and visa are barred by *res judicata*; (2) that Plaintiff's claim under the FTCA should be dismissed because injunctive relief is not available under the FTCA, Plaintiff had not exhausted administrative remedies, and Plaintiff's claim is barred by the foreign country exception; and (3) Plaintiff's claim seeking issuance of Interpol notices must fail because the FBI and Interpol are not parties to the case, Plaintiff's wife is an indispensable party but cannot be joined to the case, and requesting that Interpol issue a Yellow Notice is an enforcement activity that cannot be reviewed under the APA.  Defs.' Mem. in Supp. Mot. to Dismiss 13–26, ECF. No. 14-1.

On April 18, 2022, the Court issued a minute order noting that one of Plaintiff's "declarations" had referred to "arbitrary agency action" and attached documents indicating what appeared to be Defendants' final actions on April 15, 2022 denying Plaintiff's requests that passports be issued for M.S. and S.S. and that a CBRA be issued for the latter child.  As explained in its minute order, the Court construed this "declaration" as a motion to file a supplemental pleading challenging Defendants' final agency action under the APA, and ordered that Defendants file a dispositive motion in response.  Pursuant to the Court's order, Defendants then filed the administrative record in this matter on May 18, 2022.  Admin. R., ECF No. 31.

### III.    LEGAL STANDARD

### A.    Rule 12(b)(6) Motion to Dismiss

To meet the requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "'a short and plain statement of the claim showing that the pleader is

entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Requiring "more than a sheer possibility that a defendant has acted unlawfully," the plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).") (internal citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Id.* Further, a court need not accept a plaintiff's legal conclusions as true, *see id.*, nor presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.  Finally, a court "may also disregard 'the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice.'" *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 92 (D.D.C. 2021) (quoting *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004)).

### B.      Motion for Leave to Amend a Complaint

Pursuant to the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within 21 days after serving it, or within a specified amount of time if the pleading is one to which a responsive pleading is required.  Fed. R. Civ. P. 15(a)(1).  In all other cases, a party may amend its pleading only with the opposing party's consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).

The decision to grant or deny leave to amend "is committed to a district court's discretion."  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam).  Leave to amend a complaint should be freely granted by the court "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court should also be mindful that a *pro se* litigant's complaint should be "construed liberally and is held to 'less stringent standards than formal pleadings drafted by lawyers.'"  *Lemon v. Kramer*, 270 F. Supp. 3d 125, 133 (D.D.C. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).  Nevertheless, a court "may deny a motion to amend if such amendment would be futile," *De Sousa v. Dep't of State*, 840 F. Supp. 2d 92, 113 (D.D.C. 2012) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)), such as if the amendment "merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss," *id.* (quoting *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002)); *see also, e.g.*, *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss.").

## IV.     ANALYSIS

**A.     Plaintiff's Motions Challenging Defendants' Non-Issuance of Passports, CRBA, and Social Security Number**

Prior to the Court's April 18, 2022 minute order and Defendants' May 18, 2022 filing of the administrative record, Plaintiff filed motions reiterating his demands for an order compelling Defendants to issue passports for M.S. and S.S. and a CRBA and Social Security number for S.S. *See* Pl.'s Ex Parte Decl. and Emer. Mot. for Order to Compel Passport Issuance 5, ECF No. 7; Pl.'s Second Decl. 1, ECF No. 8.  The Court construes these motions as challenges under the APA to Defendants' non-issuance of the passports, CRBA, and Social Security number.[4]  In Defendants' Motion to Dismiss, Defendants contend that Plaintiff's claims related to the passports, CRBA, and Social Security number are barred by *res judicata*, Defs.' Mem. in Supp. Mot. to Dismiss 13–16, ECF No. 14-1, and that Plaintiff's claim regarding the CRBA for S.S. should also be dismissed because there was no final agency action on the issue to challenge at that time, *id.* at 13.

Plaintiff's motions that (1) seek an order compelling Defendants to issue the passports, CRBA, and Social Security number and (2) predate Defendants' final agency action and filing of the administrative record are deficient for two reasons.  First, these filings preceded Defendants' final agency action, which is a prerequisite for review under the APA.  Second, even if there had been final agency action, the Court could not have reviewed that action because the motions predated the filing of the administrative record.  Although the Court will accordingly dismiss these motions, it does so without prejudice to consideration of these motions on the merits as to the claims that remain live as detailed below.

---

[4] These motions also request writs of mandamus as to these documents.  The Court addresses these requests below.

### 1.      Absence of Final Agency Action

Under the Administrative Procedure Act ("APA"), "[a] person suffering legal wrong

because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to

judicial review thereof." 5 U.S.C. § 702.  But the APA generally limits causes of action to those

challenging final agency action.  *See, e.g.*, *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 188

(D.C. Cir. 2006); *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C.

Cir. 2006) ("Review under the APA is further limited to '*final agency action* for which there is

no other adequate remedy in a court.'") (quoting 5 U.S.C. § 704).  Final agency action "'mark[s]

the consummation of the agency's decisionmaking process' and is 'one by which rights or

obligations have been determined, or from which legal consequences will flow.'"  *Reliable*

*Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003)

(quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)).  "The agency must have made up its mind,

and its decision must have 'inflict[ed] an actual, concrete injury' upon the party seeking judicial

review."  *AT&T Co. v. Equal Employment Opp. Comm'n*, 270 F.3d 973, 975 (D.C. Cir. 2001)

(citation omitted).  "Such an injury typically is not caused when an agency merely expresses its

view of what the law requires of a party, even if that view is adverse to the party."  *Id.*

"Whether there has been 'agency action' or 'final agency action' within the meaning of

the APA are threshold questions; if these requirements are not met, the action is not reviewable."

*Fund for Animals*, 460 F.3d at 18.  In other words, "[w]ith a few exceptions, if there is no final

agency action, there is no basis for review of the government's decision or policy," *Cobell v.*

*Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001), and "the court . . . cannot reach the merits of the

dispute," *Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 594 (D.C. Cir. 2001) (quoting

*DRG Funding Corp. v. Sec'y of Hous. & Urb. Dev.*, 76 F.3d 1212, 1214 (D.C. Cir. 1996)).

There is, however, an exception to this requirement of final agency action "where plaintiffs claim that a governmental action was unlawfully withheld or unreasonably delayed." *Cobell*, 240 F.3d at 1095.  When the delayed agency action is "extremely lengthy or when 'exigent circumstances render it equivalent to a final denial of petitioners' request,' the court can undertake review as though the agency had denied the requested relief." *Pub. Citizen Health Rsch. Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 32 (D.C. Cir. 1984) (quoting *Envtl. Def. Fund, Inc. v. Hardin*, 428 F.2d 1093, 1098 (D.C. Cir. 1970)).

Here, Plaintiff's motions preceded Defendants' apparent final agency action as to the passports and CRBA on April 15, 2022, when Defendants sent letters to Plaintiff stating that his applications for passports for the two children and the CRBA for S.S. were denied.  Pl.'s Decl. Ex. A, ECF No. 29.  On that date, Defendants made up their minds about Plaintiff's applications for the passports and the CBRA, rendering decisions from which legal consequences flowed. Defendants' communications to Plaintiff prior to that date, advising him as to the requirements that he must meet for issuance of the documents, did not constitute final action because Defendants were "merely express[ing] [their] view of what the law requires of [Plaintiff]." *AT&T*, 270 F.3d at 975.  Plaintiff's motions related to the passports, CRBA, and Social Security number[5] that predated April 15, 2022 were therefore premature and not reviewable due to the lack of final agency action.

---

[5] Though Defendants did not refer explicitly in their letters of April 15, 2022 to Plaintiff's requests that a Social Security number be issued, as noted in *Stone I*, "a CBRA is a necessary predicate to the issuance of a Social Security card." *Id.*, 2020 WL 6746925 at *7 n. 7.  Because the Court dismisses Plaintiff's motions regarding the issuance of the CRBA, the Court must necessarily also dismiss Plaintiff's claims related to the issuance of a Social Security card.

### 2.      Absence of Administrative Record

In reviewing agency action, courts must "review the whole record or those parts of it cited by a party."  5 U.S.C. § 706.  It is "black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)).  Though this Circuit has occasionally ruled on the merits without an administrative record, *see Dist. Hosp. Partners, L.P. v. Sebelius*, 794 F. Supp. 2d 162, 171 (D.D.C. 2011), courts must review the administrative record when "the plaintiff is challenging not only the administrative decision, but also the process that led to that decision," *Swedish Am. Hosp. v. Sebelius*, 691 F. Supp. 2d 80, 89 (D.D.C. 2010); *see also Vargus v. McHugh*, 87 F. Supp. 3d 298, 301 (D.D.C. 2015) ("[W]hen courts must determine whether the 'adjudicatory process was reasonable and whether the decision was consistent with Congressional intent[,]' they must look to the administrative record.") (citation omitted).  "To review less than the full administrative record might allow a party to withhold evidence unfavorable to its case, and so the APA requires review of 'the whole record.'"  *Walter O. Boswell Mem'l Hosp.*, 749 F.2d at 792 (quoting 5 U.S.C. § 706).

Plaintiff's motions as to the passports, CRBA, and Social Security number predating May 18, 2022 were thus again premature.  Defendants did not file the administrative record in this matter until May 18, 2022.  Even if there had been final agency action for this Court to review, Plaintiff's written representations, "declarations," and exhibits in the absence of the administrative record would not have been sufficient for discerning the bases on which Defendants acted.  *Cf. Am. Bioscience, Inc. v. Thompson*, 243 F.3d 579, 582 (D.C. Cir. 2001).

Nor can the Court refer simply to the administrative record filed in *Stone I*, when Plaintiff alleges claims arising out of events postdating that record. Absent the administrative record, the Court did not at the time of the motions have a proper basis upon which to consider those motions.

### 3.      Consideration on the Merits

For these reasons, the Court will dismiss Plaintiff's motions that (1) relate to issuance of the passports, CRBA, and Social Security number and (2) predated Defendants' final agency action and filing of the administrative record. But the Court will dismiss these motions without prejudice to the Court's consideration of the claims raised in those motions on the merits.

Notwithstanding the denial of those premature motions, Plaintiff's claims under the APA challenging Defendants' denial of the passports and CRBA remain live, due to Plaintiff's complaint and supplemental pleading having alleged sufficient facts to support a potential claim under the APA in light of the liberal pleading standards required of *pro se* litigants. Further, now that Defendants have taken final agency action on the passports and CRBA and filed the administrative record, those actions are ripe for review on the merits.

The Court will therefore consider Plaintiff's claims as to the passports, CRBA, and Social Security number[6] on their merits. However, the Court notes that, even if Plaintiff were to succeed on the merits, the Court can under 5 U.S.C. § 706(1) only direct an agency to "take action upon a matter, without directing how [the agency] shall act." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); *see also, e.g.*, *Gagan v. Holder*, No. CIV. A. 09 1996, 2009 WL 3497113 at *1 (D.D.C. Oct. 21, 2009). As the Court stated in *Stone I*, the Court could at most issue a mandamus to order Defendants consider Plaintiff's applications, but it could not

---

[6] Again, because the issuance of the Social Security number is tied to the issuance of the children's passports and CRBAs, Plaintiff's claim related to the Social Security number remains live.

order the Department of State to approve the applications and issue the documents.  *See* 2020
WL 6746925 at *3; 2020 WL 4260711 at *8.

### B.        Plaintiff's Motions for Leave to Amend the Complaint

Within his litany of motions, "declarations," and other filings, Plaintiff appears to raise
additional claims and request forms of relief not originally included in his complaint.  Given the
liberal pleading standards applied to *pro se* litigants, *see Lemon*, 270 F. Supp. 3d at 133, the
Court will construe these filings as motions for leave to amend the complaint to add these claims
and considers each in turn.

### 1.        APA Review of Alleged Non-Implementation of Goldman Act Measures

Plaintiff contends that Defendants' failure to implement specific "non-optional" Goldman
Act measures—including the "removal of preferential trade status and removal of security
measures"—should be reviewed under the APA.  Pl.'s Mot. for Mandamus and Inj. Relief to
Compel Goldman Act Sanctions 1, 15, ECF No. 22.[7]  Such a claim of allegedly wrongful agency
inaction "can proceed only where a plaintiff asserts that an agency failed to take a *discrete*
agency action that it is *required to take*."  *S. Utah Wilderness All.*, 542 U.S. at 64.  Here,
Plaintiff fails to state a claim that raises even the reasonable inference that Defendants have
failed to take any action they are required to take under the Goldman Act.  Sections 201(b) and
(c) of the Goldman Act state in relevant part:

> (b) Actions by the Secretary of State in Response to Unresolved Cases.—
>
> > (1) Determination of Action by the Secretary of State.—For each abduction or
> > access case relating to a child whose habitual residence is in the United States that
> > remains pending or is otherwise unresolved on the date that is 12 months after the
> > date on which the Central Authority of the United States submits such case to a
> > foreign country, the Secretary of State shall determine whether the government of

---

[7] The Court notes that Plaintiff made a seemingly identical filing, stylized instead as a "Supplemental Memorandum
(Mandamus)" to an earlier Motion to Compel.  Pl.'s Suppl. Mem., ECF No. 12.

such foreign country has failed to take appropriate steps to resolve the case. If the Secretary of State determines that such failure occurred, the Secretary should, as expeditiously as practicable—

> (A) take [one] or more of the actions described in subsections (d) and (e) of section 202; and

> (B) direct the Chief of Mission in that foreign country to directly address the resolution of the case with senior officials in the foreign government.

(c) Implementation.—

> (1) In General.—In carrying out subsection (b), the Secretary of State should—

> (A) take [one] or more actions that most appropriately respond to the nature and severity of the governmental failure to resolve the unresolved abduction case; and

> (B) seek, to the fullest extent possible—

>> (i) to initially respond by communicating with the Central Authority of the country; and

>> (ii) if clause (i) is unsuccessful, to target subsequent actions—

>>> (I) as narrowly as practicable, with respect to the agencies or instrumentalities of the foreign government that are responsible for such failures; and

>>> (II) in ways that respect the separation of powers and independence of the judiciary of the country, as applicable.

128 Stat. 1807, 1817–18.

Section 202(c)(1) of the Goldman Act then sets forth in relevant part that, no longer than 90 days after a country is "determined to have been engaged in a pattern of noncompliance . . .," the Secretary of State shall:

> (A) take [one] or more of the actions described in subsection (d);

> (B) direct the Chief of Mission in that country to directly address the systemic problems that led to such determination; and

> (C) inform senior officials in the foreign government of the potential repercussions related to such designation.

*Id.* at 1819.  In turn, Sections 202(d) and (e)(1) state in relevant part:

> (d) Description of Actions by the Secretary of State in Hague Abduction Convention Countries.—Except as provided in subsection (f), the actions by the Secretary of State referred to in this subsection are—

14

(1) a demarche;

(2) an official public statement detailing unresolved cases;

(3) a public condemnation;

(4) a delay or cancellation of 1 or more bilateral working, official, or state visits;

(5) the withdrawal, limitation, or suspension of United States development assistance in accordance with section 116 of the Foreign Assistance Act of 1961 (22 U.S.C. 2151n);

(6) the withdrawal, limitation, or suspension of United States security assistance in accordance with section 502B of the Foreign Assistance Act of 1961 (22 U.S.C. 2304);

(7) the withdrawal, limitation, or suspension of assistance to the central government of a country pursuant to chapter 4 of part II of the Foreign Assistance Act of 1961 (22 U.S.C. 2346 et seq.; relating to the Economic Support Fund); and

(8) a formal request to the foreign country concerned to extradite an individual who is engaged in abduction and who has been formally accused of, charged with, or convicted of an extraditable offense.

(e) Commensurate Action.—

(1) In General.—Except as provided in subsection (f), the Secretary of State may substitute any other action authorized by law for any action described in subsection (d) if the Secretary determines that such action—

(A) is commensurate in effect to the action substituted; and

(B) would substantially further the purposes of this Act.

*Id.* at 1820.  Section 204 of the Goldman Act then further allows the Secretary of State to "waive the application of any of the actions described in subsections (d) and (e) of section 202 with respect to a country" under specified conditions.  *Id.* at 1821.

Although not entirely clear from Plaintiff's filing, it would appear Plaintiff claims that some provision of the Goldman Act has been triggered so as to require Defendants to remove preferential trade status and security measures from Japan or to implement other "non-optional" measures.  Yet Sections 202(b) and 202(c)(1) trigger a requirement for the Secretary of State to undertake, in addition to certain diplomatic outreach and/or action by the Chief of Mission, only *one* or more actions described in subsection (d) (and, in the case of section (b), in subsection (e));

15

Section 204 then requires justification of waiver if the Secretary of State waives application of *any* of the actions described in subsections (d) and (e).  Among those potential actions listed in subsections (d) and (e) is the issuance of a démarche.  Notably, Plaintiff acknowledges in his relevant filing: "Defendants have issued Japan endless demarches, diplomatic protests . . . ." Pl.'s Mot. for Mandamus and Inj. Relief to Compel Goldman Act Sanctions 4, ECF No. 22; *see also* Compl. ¶ 30 ("At what point would passport reissue where Defendants have repeatedly issued demarche after demarche to Japanese authorities demanding abductions into Japan cease?").

Thus, even under the assumption that Defendants had an obligation to act that was triggered by Section 202 of the Goldman Act and that Plaintiff has standing to bring this claim— two questions on which this Court does not opine—Plaintiff has not raised a reasonable inference that Defendants failed to meet that obligation.  That Defendants have not enacted as punitive of measures as Plaintiff desires does not mean that Defendants have failed to act as required by the statute and are subject to compulsion under the APA.  The Court will therefore deny as futile leave to amend the complaint to include Plaintiff's claim for APA review of Defendant's non-implementation of certain Goldman Act measures.

### 2.     Referral for Criminal Charges

Plaintiff also requests that the Court "forward" his matter to the Attorney General or otherwise recommend to the Department of Justice that criminal charges be brought against Ms. Suzuki and others.  Pl.'s Decl. 6, ECF No. 6; Pl.'s Mot. for Court to Request the Dep't of Justice File Crim. Charges 7, ECF No. 17.  Separation of powers requires "that the Judicial Branch neither be assigned nor allowed 'tasks that are more properly accomplished by [other] branches.'"  *Mistretta v. United States*, 488 U.S. 361, 383 (1989) (quoting *Morrison v. Olson*,

487 U.S. 654, 680–81 (1988)). "[T]he decision whether or not to prosecute and what charges to file generally rests within the prosecutor's broad discretion." *United States v. MacEwan*, 445 F.3d 237, 251 (3d Cir. 2006) (quoting *United States v. Esposito*, 968 F.2d 300, 306 (3d Cir. 1992)); *see also In re Wild*, 994 F.3d 1244, 1260 (11th Cir. 2021) ("The Supreme Court has repeatedly reaffirmed the principle—which dates back centuries—that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'") (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)). It is not within this Court's power or consistent with separation of powers principles for the Court to recommend criminal charges to the Department of Justice. The Court will therefore also deny as futile leave to amend Plaintiff's complaint to include this claim.[8]

### 3.   Writs of Mandamus for Issuance of Documents, Yellow Notices, Welfare Check, Engagement with Japanese Authorities, and Implementation of Goldman Act Measures

In addition or in alternative to an order compelling Defendants' acquiescence to Plaintiff's various requests, Plaintiff explicitly requests in a number of filings writs of mandamus ordering that: (1) Defendants issue the passports, CRBA, and Social Security number; (2) Yellow Notices be issued for the two children and his wife;[9] (3) Defendants perform the child welfare checks requested by Plaintiff;[10] and (4) Defendants implement particular measures under the Goldman Act against Japan. ECF Nos. 6, 7, 8, 22, 27. In another filing, Plaintiff further requests that the Court issue orders compelling Defendants to engage Japan's Central Authority

---

[8] Plaintiff also demands in a filing on June 27, 2022 that warrants be issued for the arrests of Ms. Suzuki and two others and that they be extradited to the United States. Pl.'s Resp. re Errata 2, ECF No. 33. For the same reasons explained in this section, the Court will deny as futile leave to amend the complaint to add such claims.
[9] Though Plaintiff couches his request that a Yellow Notice be issued for his wife as a request for an emergency order, the Court will also construe this request as a request for a writ of mandamus. *See* Pl.'s Emer. Mot. for Court to Order Interpol Yellow Notice 3, ECF No. 13.
[10] Although Plaintiff's Emergency Motion to Compel Child Welfare Check does not explicitly request a writ of mandamus, the Court will construe this request as a request for a writ of mandamus as well. *See* Pl.'s Emer. Mot. to Compel Child Welfare Check 13, ECF No. 11.

and request that Japan issue a return order for one of the children under the Hague Convention. Pl.'s Mot. to Compel Defs. to Engage Japan's Central Authorities 7, ECF No. 18.  The Court construes this filing as an additional request for a writ of mandamus.

Under 28 U.S.C. § 1361, the district courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  *Id.*  "[I]t is well settled that a writ of mandamus is not available to compel discretionary acts."  *Wightman-Cervantes v. Mueller*, 750 F. Supp. 2d 76, 81 (D.D.C. 2010) (quoting *Cox v. Sec'y of Labor*, 739 F. Supp. 28, 30 (D.D.C. 1990)).  "A court may properly issue a writ of mandamus only if 'the duty to be performed is ministerial and the obligation to act peremptory and clearly defined.  The law must not only authorize the demanded action, but require it; the duty must be clear and undisputable.'"  *Shoshone Bannock Tribes v. Reno*, 56 F.3d 1476, 1480 (D.C. Cir. 1995) (quoting *13th Reg'l Corp. v. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980)); *see also In re Nat'l Nurses United*, No. 22-1002, 2022 WL 3694867 at *8 (D.C. Cir. Aug. 26, 2022) ("Writs of mandamus are reserved for 'the ordering of a precise, definite act about which an official ha[s] no discretion whatever.'") (quoting *S. Utah Wilderness All.*, 542 U.S. at 63).  Further, "[t]he remedy of mandamus is a drastic one" and should be "invoked only in extraordinary circumstances."  *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (quoting *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002)).  For a court to issue a remedy of mandamus, a plaintiff must show "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists."  *Burwell*, 812 F.3d at 189.

The Court must deny Plaintiff's mandamus claims because the Court cannot grant Plaintiff's requested relief.  This Court does not have the power to issue writs of mandamus for

the discretionary acts Plaintiff seeks.  This Court cannot order Defendants to issue the passports, CRBA, and Social Security number because the issuance of these documents is a discretionary act.  But as the Court has noted elsewhere in this opinion, the Court will consider Plaintiff's APA claims related to the passports, CRBA, and Social Security number on their merits.

As explained in Section IV.B.1, the Court is not convinced by Plaintiff's unsupported assertions that certain Goldman Act measures are "non-optional" and required to be implemented by law, such that their implementation could be ordered by mandamus.

Nor can this Court order Defendants to perform welfare checks on M.S. and S.S.  In support of his request for welfare checks, Plaintiff cites excerpts from the Department of State's Foreign Affairs Manual, *see* Pl.'s Emer. Mot. to Compel Child Welfare Check 2–6, ECF No. 11, which is "an internal guideline that sets forth agency practice and procedures," *Patel v. U.S. Dep't of State*, No. 11-cv-6-wmc, 2013 WL 3989196 at *4 (W.D. Wis. Aug. 2, 2013).  That the Foreign Affairs Manual offers guidance about conducting welfare checks, however, does not mean that such checks are ministerial, non-discretionary acts.  "Because internal guidelines and agency manuals like the Foreign Affairs Manual are not subject to APA rulemaking procedures, they lack the force of law and do not bind agency discretion." *Id.* (citing *Vietnam Veterans of America v. Sec'y of the Navy*, 843 F.2d 528, 537 (D.C. Cir. 1988)).  Moreover, the Foreign Affairs Manual makes clear that the question of whether and how to conduct a welfare check is situation-dependent and leaves room for the consular officer to exercise judgment.  *See, e.g*, U.S. Dep't of State, 7 Foreign Affairs Manual § 1715.1-3 ("*On occasion*, the only way to confirm definitively the location of the child or the taking parent may be for the consular officer to see them personally or to enlist the help of others in the community who may have seen the child or [taking parent].") (emphasis added); *id.* § 141 ("When the family knows where the person is

located, but has concerns for the individual's welfare, there are a variety of options available to the consular officer to accomplish this task. Consular officers are not professional social workers . . . We cannot compel a person to permit a consular officer to observe a citizen or national, inspect the household, etc."). The performance of welfare checks is therefore discretionary, and the Court cannot issue a writ of mandamus to order such discretionary action.

Next, the Court cannot for several reasons issue a writ ordering that Yellow Notices be issued for Plaintiff's wife and children, or that the FBI request that Interpol issue such Yellow Notices.[11] As an initial matter, neither the FBI nor Interpol (nor Interpol Washington, which serves as the United States' National Central Bureau) is party to this case. Defs.' Mem. in Supp. Mot. to Dismiss 20–22, ECF No. 14-1. Defendants who are party to this case cannot issue the Yellow Notices themselves. *Id.* But even if either the FBI or Interpol had been party to this case, Plaintiff's request for mandamus would fail. First, Plaintiff fails to show that Interpol would be required by law to issue such notices, or that the FBI would be required by law to make such a request of Interpol. Both are therefore discretionary acts that cannot be ordered by mandamus. Second, Plaintiff in essence requests that this Court mandate that the FBI take action that it has thus far declined to take. *See* Pl.'s Emer. Mot. for Court to Order Interpol Yellow Notice 2, ECF No. 13 (indicating that Plaintiff has spoken with the FBI about issuance of the Yellow Notices). But, as Defendants argue in their Motion to Dismiss, *see* Defs.' Mem. in Supp. Mot. to Dismiss 25–26, ECF No. 14-1, the Supreme Court "has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion," *Heckler*

---

[11] Plaintiff further demands in a filing on June 27, 2022 that Interpol issue Red Notices for Ms. Suzuki and two others. Pl.'s Resp. re Errata 2, ECF No. 33. For the same reasons explained in this section, the Court will deny as futile leave to amend the complaint to add such claims.

*v. Chaney*, 470 U.S. 821, 831 (1985); *see also Shoshone Bannock Tribes*, 56 F.3d at 1481.  In

deciding whether to enforce a law, "the agency must not only assess whether a violation has

occurred, but whether agency resources are best spent on this violation or another, whether the

agency is likely to succeed if it acts, whether the particular enforcement action requested best fits

the agency's overall policies, and, indeed, whether the agency has enough resources to undertake

the action at all." *Heckler*, 470 U.S. at 831.  Consistent with these principles, the Court cannot

and will not interject itself here by mandating a discretionary agency action that the FBI, even

though aware of Plaintiff's allegations, has not taken.

Finally, the Court cannot order that Defendants engage with Japan's Central Authority on

the Hague Convention about a return order.  "Disputes involving foreign relations . . . are

'quintessential sources of political questions.'" *El-Shifa Pharm. Indus. Co. v. United States*, 607

F.3d 836, 841 (D.C. Cir. 2010) (quoting *Bancoult v. McNamara*, 445 F.3d 427, 433 (D.C. Cir.

2006)).  Such "[m]atters intimately related to foreign policy and national security are rarely

proper subjects for judicial intervention." *Id.* (quoting *Haig v. Agee*, 453 U.S. 280, 292 (1981)).

But "drawing the line between nonjusticiable and justiciable claims, at least in foreign-relations

cases, involves identifying those claims that require the court to opine on the 'wisdom of

discretionary decisions made by the political branches in the realm of foreign policy[,]' as

distinguished from claims that '[p]resent[ ] purely legal issues such as whether the government

had legal authority to act.'" *Mobarez v. Kerry*, 187 F. Supp. 3d 85, 91 (D.D.C. 2016) (quoting

*El-Shifa Pharm. Indus. Co.*, 607 F.3d at 842).  A question is justiciable where a court is "merely

tasked with the 'familiar judicial exercise' of determining how a statute should be interpreted or

whether it is constitutional," as opposed to "being asked to supplant a foreign policy decision of

the political branches with the courts' own unmoored determination." *Id.*, 187 F. Supp. 3d at 92

(quoting *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 196 (2012)) (internal quotation marks omitted).  The D.C. Circuit has "consistently held . . . that courts are not a forum for reconsidering the wisdom of discretionary decisions made by the political branches in the realm of foreign policy or national security," *El-Shifa Pharm. Indus. Co.*, 607 F.3d at 842, and has also "declined to adjudicate claims seeking only a 'determination[ ] whether the alleged conduct *should* have occurred,'" *id.* (quoting *Harbury v. Hayden*, 522 F.3d 413, 420 (D.C. Cir. 2008)).  Plaintiff's request for a writ ordering Defendants to engage Japan's Central Authority is a request for this Court to "supplant a foreign policy decision of the political branches with [its] own unmoored determination" that it would be appropriate for the United States to make a diplomatic entreaty to Japan about Plaintiff's matter. *Zivotofsky*, 566 U.S. at 196.  Consistent with this Circuit's precedents, this Court declines to do so.

In sum, the Court will deny as futile Plaintiff's requests for leave to amend his complaint to add such requests for writs of mandamus.

### 4.    FTCA Claim

In one of his "declarations," Plaintiff also appears to try to bring a claim under the FTCA against "federal law enforcement officers of the FBI for being fully informed that Plaintiff's children are in an abducted state . . . ."  Pl.'s Decl. 2, ECF No. 6.  Defendants respond that not only does Plaintiff's FTCA claim seek injunctive relief not available under the APA, but it is also barred because Plaintiff has not exhausted administrative remedies and the claim falls within the FTCA's foreign country exception.  Defs.' Mem. in Supp. Mot. to Dismiss 17–20, ECF No. 14-1.

The FTCA is a "limited waiver of the Government's sovereign immunity," permitting plaintiffs to "sue the United States in federal court for state-law torts committed by government

employees within the scope of their employment." *Harbury v. Hayden*, 522 F.3d 413, 416 (D.C. Cir. 2008). "The only proper defendant for an FTCA claim is the United States." *Sanchez-Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 404, 415 (D.D.C. 2020). Thus, "[e]ven if a federal agency may sue and be sued in its own name, FTCA claims against that federal agency are barred . . . Failure to name the United States as the defendant in an FTCA action requires dismissal for lack of subject-matter jurisdiction." *Johnson v. Veterans Affairs Med. Ctr.*, 133 F. Supp. 3d 10, 17 (D.D.C. 2015) (internal citations omitted). Additionally, under D.C. Circuit precedent, a failure to exhaust administrative remedies under the FTCA is a jurisdictional defect. *See Smith v. Clinton*, 886 F.3d 122, 127 (D.C. Cir. 2018) (per curiam).

For several reasons, it would be futile to amend Plaintiff's complaint to include his FTCA claim. The United States is not a defendant in this suit. *See Sanchez-Mercedes*, 453 F. Supp. 3d at 415. Nor does Plaintiff appear to make any claim for money damages, which are the only relief provided under the FTCA.[12] *See, e.g.*, *Hall v. United States*, 44 F.4th 218 (4th Cir. 2022).

But even if the United States had been properly named as a defendant or if the claim had sought money damages, Plaintiff fails to allege that he exhausted the requisite administrative requirements. In accordance with the FTCA, a claimant must have "first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). "In this Circuit, 'a jurisdictionally adequate presentment is one which provides to the appropriate agency (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim.'" *Achagzai v. Broad. Bd. of Governors*, 109 F. Supp. 3d 67, 69–70 (D.D.C. 2015) (quoting *GAF Corp. v. United States*, 818 F.2d 901, 905 (D.C. Cir. 1987)).

---

[12] Though Plaintiff refers to S.S. not qualifying for Cares Act benefits absent a Social Security number, Compl. ¶ 128, as well as a "mountain of damages" arising from the passport claims, *id.* ¶ 33, Plaintiff does not appear to allege monetary damages in connection with his FTCA claim against the FBI.

Plaintiff has not alleged that he complied with the FTCA's exhaustion requirement by fulfilling these steps. Plaintiff's "fail[ure] to allege that [he] satisfied the requirement that [he] exhaust administrative remedies before filing an FTCA claim" requires dismissal. *Id*. For these reasons, the Court will deny as futile Plaintiff's request for leave to amend to include his FTCA claim against the FBI.

## C.   Defendants' Motion to Dismiss

The Court's denial of Plaintiff's motions above addresses most of Defendants' Motion to Dismiss. The Court will now turn to the remaining arguments in that Motion to Dismiss, which speak to Plaintiff's claims related to the passports, CRBA, Social Security number, and visa application.

### 1.   Passports, CRBA, and Social Security Number

Defendants argue in their Motion to Dismiss that Plaintiff's claims related to the passports, CRBA, and Social Security number are barred by *res judicata*, defined to encompass both claim and issue preclusion. Defs.' Mem. in Supp. Mot. to Dismiss 13–17, ECF No. 14-1. "The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat. Pension Fund, Ben. Plan A v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983). *Res judicata* is "an affirmative defense that is generally pleaded in a defendant's answer," *Nader v. Democratic Nat. Comm.*, 590 F. Supp. 2d 164, 169 (D.D.C. 2008), but it "may be asserted in a motion to dismiss when 'all relevant facts are shown by the court's own records, of which the court takes notice,'" *id.* (quoting *Hemphill v. Kimberly–Clark Corp.*, 530 F. Supp. 2d 108, 111 (D.D.C. 2008)). In addition, "a court may invoke res judicata *sua sponte*." *Sieverding v. Am. Bar Ass'n*, 439 F. Supp. 2d 120, 123 (D.D.C. 2006) (citing *Stanton v. D.C. Ct. of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997).

Under the doctrine of claim preclusion, a claim is barred "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006).  In determining whether the prior litigation involved the same claims or cause of action, a court will review "whether the actions 'share the same nucleus of facts.'" *Middleton v. United States Dep't of Lab.*, 318 F. Supp. 3d 81, 86 (D.D.C. 2018) (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984) (internal quotation marks omitted).  It does so by assessing "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* at 87 (quoting *Stanton*, 127 F.3d at 78).  Claim preclusion "bars relitigation not only of matters determined in a previous litigation but also ones a party could have raised[.]" *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 491 (D.C. Cir. 2009) (quoting *Nat. Res. Def. Council, Inc. v. Thomas*, 838 F.2d 1224, 1252 (D.C. Cir. 1988)).

Issue preclusion "mean[s] that 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).  Three elements must be met for issue preclusion to apply: (1) "the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case;" (2) "the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case;" and (3) "preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Martin v. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir.

2007). "When the determination 'is essential to the judgment, [it] is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *Johnson v. United States*, 841 F. Supp. 2d 218, 220 (D.D.C. 2012) (quoting *Consolidated Edison Co. of New York v. Bodman*, 449 F.3d 1254, 1258 (D.C. Cir. 2006)) (citation and internal quotation marks omitted).

"In short, 'claim preclusion forecloses all that which might have been litigated previously,' while issue preclusion "prevents the relitigation of any issue that was raised and decided in a prior action." *Nader*, 590 F. Supp. 2d at 168 (quoting *I.A.M. Nat'l Pension Fund*, 723 F.2d at 949). Considering that not "all relevant facts are shown by the court's own records," as Plaintiff alleges new facts following termination of *Stone I*, Defendants' arguments of claim and issue preclusion would likely have been more appropriate in a subsequent pleading. *Id.* at 169 (citation omitted). Nevertheless, the Court considers the applicability of claim and issue preclusion to Plaintiff's claims relating to the passports, CRBA, and Social Security number, because it would have in any case been within the Court's power to do so *sua sponte*.

Though Plaintiff's remaining claims regarding the children's passports, CRBA, and Social Security number in this matter ring strikingly familiar, they are not barred by either claim or issue preclusion. Claim preclusion "does not bar parties from bringing claims based on material facts that were not in existence when they brought the original suit." *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 218 (D.C. Cir. 2004); *see also Does I through III v. Dist. of Columbia*, 238 F. Supp. 2d 212, 219 (D.D.C. 2002) ("[C]ourts have held that claim preclusion does not extend to claims that did not arise until after the original pleading was filed in the earlier litigation."). "Res judicata does not bar litigation of an issue merely because it is in some remote way related to an issue litigated in a prior action." *Mead v. Lindlaw*, 839 F. Supp. 2d 66, 74 (D.D.C. 2012) (citation omitted). Plaintiff's current claims on these issues stem from

applications executed in January 2022 and are not barred because the underlying facts were not in existence during *Stone I*.

Moreover, this Court did not decide an issue of fact or law in *Stone I* such that Plaintiff would be wholly precluded by issue preclusion from bringing his claims here.  In *Stone I*, this Court concluded that the denial of Plaintiff's application for a passport for M.S. was not arbitrary and capricious, based on the record before Defendants before their June 2019 decision, *id.*, 2020 WL 6701078 at *10–11, and that Defendants had not yet taken final agency action on Plaintiff's CRBA application for S.S., *id.*, 2020 WL 6746925 at *5–7.  Whether or not Defendants' denial of Plaintiff's applications here should be held unlawful under the APA is a new inquiry that will depend on this matter's administrative record.  Though there may be overlap between this inquiry and that in *Stone I*, the application of the APA framework to the instant administrative record is not an issue that was contested and determined in the prior case.

The Court will therefore deny Defendant's motion to dismiss on Plaintiff's passport, CRBA, and Social Security number claims, without prejudice to the Court's consideration of this motion on the merits of those claims.

## 2.     Visa

From what the Court can discern from Plaintiff's filings, Plaintiff also claims that Defendants have "arbitrarily delay[ed] final agency action to avoid judicial review" as to his wife's Form I-130 application submitted in August 2018.  *See* Compl. ¶¶ 62, 118, ECF No. 1 (listing case number); *Stone I*, 19-cv-3273 (D.D.C. May 3, 2020), Pl's Decl. on Wife's Visa App. Ex. B, ECF No. 102 (listing same case number).  As relief, Plaintiff seeks an order that either compels Defendants to issue Ms. Suzuki's visa or schedule her visa interview.  Compl. at 1, ¶¶ 103, 118, ECF No. 1.  The Court construes Plaintiff's filing as seeking to challenge

Defendants' alleged delay in scheduling Ms. Suzuki's interview for her Form I-130 application under the APA.[13]  In response, Defendants contend not only that Plaintiff's claim is barred by *res judicata*, but also that neither Plaintiff nor Ms. Suzuki has paid the requisite fees for a visa application and that there is no application for a U.S. consular officer to even adjudicate.  Defs.' Mem. in Supp. Mot. to Dismiss 16, ECF No. 14-1.  The Court need not decide whether Plaintiff's claim regarding his wife's visa application is precluded because Plaintiff has not shown that there has been final agency action for this Court to review under the APA.

Plaintiff's complaint—which stresses that a web link apparently provided to Plaintiff in July 2020 could no longer be accessed, Compl. ¶¶ 60–67, ECF No. 1—does not appear to indicate any agency action that could be construed as the "'consummation' of the agency's decisionmaking process" or a decision "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow,'" *Bennett*, 520 U.S. at 178 (citations omitted). Plaintiff has not alleged, and has provided no evidence, that Defendants have made any final decision to deny Ms. Suzuki from scheduling her visa interview, let alone to reject her visa application.

Nor does Plaintiff's claim appear to fall under the exception to this requirement of final agency action that allows judicial review when the delayed agency action is "extremely lengthy or when 'exigent circumstances render it equivalent to a final denial of petitioners' request.'" *Pub. Citizen Health Rsch. Grp.*, 740 F.2d at 32 (quoting *Envtl. Def. Fund, Inc.*, 428 F.2d at 1098).  Based on Plaintiff's exhibits, it would appear that the web link for the visa application

---

[13] The Court does not construe Plaintiff's filing as requesting a writ of mandamus for issuance of the visa because, as previously explained, the Court does not have the authority to order Defendants to issue a visa and it would therefore be futile to so construe Plaintiff's request.

expired after Plaintiff failed to act or contact the relevant agency for more than one year.  *See*

Compl. Ex. F, ECF No. 1.

Defendants have not in this matter pointed to evidence in support of their assertions that

Plaintiff and Ms. Suzuki have not paid the required fees for the visa application or to otherwise

demonstrate that Plaintiff has failed to do his own part in pursuing the visa application.

Nevertheless, the Court takes judicial notice that, when Plaintiff raised these claims about his

wife's Form I-130 application in *Stone I*, Defendants responded, and attached evidence

reflecting, that neither Plaintiff nor his wife had, as of January 15, 2020, paid the necessary fees

to advance the visa application with the National Visa Center.  *Stone I*, 19-cv-3273 (D.D.C. Jan.

23, 2020), Defs.' Opp. to Pl.'s Mots. for Leave to Amend or Supp. the Second Am. Compl. at

12–13, Ex. C, ECF No. 89; *id.*, 19-cv-3273 (D.D.C. Sept. 22, 2020), Defs.' Mot. to Dismiss Pl.'s

Third Am. Compl. 19–20, ECF No. 186.  Plaintiff was, through these filings in *Stone I*, informed

on several occasions and at some length that those fees must be paid for the application to move

forward.  Yet Plaintiff here has not evinced that those fees have been paid.[14]  There is no delayed

agency action for the Court to review because, based on the information provided by Plaintiff,

there has been no delay by Defendants.  The agency is not at fault for the wait if Plaintiff has not

---

[14] Plaintiff alleges, in relation to his wife's visa application, that "Defendants did this after taking more than 3500.00 USD, including a 1225.00 USD to expedite finalizing the visa matter." Compl. ¶ 72, ECF No. 1; Pl.'s Resp. to Defs.' Mot. to Dismiss 5–6, ECF No. 15 ("Had Defendants scheduled final interview after taking Plaintiff's 1225.00 USD to 'expedite' scheduling interview in Miami, to finalize the visa, the wife would have never fled the U.S. with the child. . . . Defendants have repeatedly stolen Plaintiff's money, now, more than 4500.00 USD, yet has done NOTHING required."). Plaintiff does not allege that he paid Defendants' processing fees and—though the Court recognizes there is some discrepancy in the numbers—appears to instead be referring to fees paid to United States Citizenship and Immigration Services ("USCIS"). *See Stone I*, 19-cv-3273 (D.D.C. May 3, 2020), Pl's Decl. on Wife's Visa App. 6, ECF No. 102 ("August 9th 2018, as per the instructions of the Kendall Field Office officials, I paid an additional 1225.00 USD fee to expedite the visa application so the final interview could be done at the Kendall Field Office."); *id.*, 19-cv-3273 (D.D.C. Aug. 24, 2020), Pl.'s Third Am. Compl. 23, ECF No. 171-1 ("Exhibit W., puts to rest any doubt Plaintiff had not paid an additionally 1225.00 USD regarding said visa, and that Plaintiff had paid visa related costs that exceeded 2500.00 USD."). Indeed, Plaintiff attaches a screenshot of a web page showing that the Department of State's fees for the visa application had not been paid. Pl.'s Suppl. Mem. re Mot. to Compel, Ex. A, ECF No. 23. Although the page is undated, its attachment by Plaintiff to his filing demonstrates further that Plaintiff has been shown how he can pay the required fees for the application.

even taken the steps necessary to trigger agency action.  Accordingly, this Court will grant Defendants' motion to dismiss Plaintiff's request for APA review of Defendants' alleged delay in acting on his wife's visa application.

## V.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motions predating Defendants' final agency action and filing of the administrative record (ECF Nos. 7, 8, 11, 13, 17, 18, and 22); **DENIES** Plaintiff's motions for leave to amend the complaint; and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss Complaint and Opposition to Plaintiff's Motions (ECF No. 14), without prejudice to the Court's consideration of these motions on the merits of Plaintiff's remaining claims.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 28, 2022                                RUDOLPH CONTRERAS
                                                         United States District Judge