UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JACK STONE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 21-3244 (RC) |
| | : | | |
| v. | : | Re Document No.: | 34 |
| | : | | |
| UNITED STATES DEPARTMENT OF STATE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

Plaintiff Jack Stone, proceeding *pro se*, brings the instant action against the United States Embassy in Tokyo and the United States Department of State CA/OCS/CI under the Administrative Procedure Act ("APA"), challenging as arbitrary and capricious the government's denial of his requests that certain documents be issued for his two children. The government has moved for the dismissal of or, in the alternative, summary judgment on Plaintiff's claims, contending that: (1) the U.S. Embassy in Tokyo should be dismissed as an improper defendant in this case, (2) Plaintiff's claims should be dismissed as a sanction for his conduct, and (3) the administrative record shows that the State Department carefully considered—before ultimately rejecting—Plaintiff's arguments that his applications should be exempted from the agency's requirements for issuance of those documents.

For the reasons explained below, the Court grants in part the government's motion for summary judgment insofar as it seeks to dismiss the United States Embassy in Tokyo and the

United States Department of State CA/OCS/CI as defendants and instead substitute the United States Department of State ("Defendant") as the sole defendant.[1] The Court denies the remainder of Defendant's motion for summary judgment. Accordingly, the Court remands the matter to the agency for further explanation of its decisions within 45 days of this opinion.

## II. BACKGROUND

As stated in the Court's recent opinion of September 28, 2022 in this matter, the facts and allegations of this case overlap substantially with those of Plaintiff's prior case before this Court, *Stone v. U.S. Embassy Tokyo* ("*Stone I*"), No. 19-cv-3273. *See Stone v. United States Dep't of State*, No. 21-cv-3244 (RC), 2022 WL 4534732, at *1 (D.D.C. Sept. 28, 2022). Though the Court presumes familiarity with its prior opinions in both *Stone I* and this matter, the Court nevertheless will explain Plaintiff's claims and the factual background, some of which the Court has not previously described, relevant to this opinion.

### A. FACTUAL BACKGROUND

On December 6, 2021, Plaintiff filed a complaint alleging that his wife, Miyuki Suzuki, had abducted his two children, M.S. and S.S., to an unknown location and that he had been unable to contact Ms. Suzuki since November 1, 2021. Compl. ¶¶ 1, 3, ECF No. 1. Plaintiff alleges that Defendant's refusal to issue passports for the two children is in part "responsible for the current reabduction situation," *id.* ¶ 43, which has also prevented Plaintiff from being able to obtain a Consular Report of Birth Abroad ("CRBA") and Social Security number for S.S., *id.* ¶¶ 120–29. Plaintiff's complaint objects to Defendant's requirements for issuing the passports for M.S. and S.S. and the CRBA for S.S.—which Plaintiff has been unable to meet—as "arbitrary."

---

[1] Hereinafter, the Court will refer to Defendant in the singular, even in reference to filings that were submitted by, or procedural background relating to, the U.S. Embassy in Tokyo and the United States Department of State CA/OCS/CI prior to their dismissal.

*Id.* ¶¶ 30, 126–28.  Plaintiff's complaint seeks an order compelling Defendant to: (1) issue passports for the two children, *id.* ¶¶ 52–54; and (2) waive the requirement that S.S. appear in person for an application for a CRBA and then issue the CRBA and a Social Security number for S.S. upon proof that S.S. satisfies the requirements for U.S. citizenship, *id.* at 17, ¶¶ 119–30.[2]

Despite filing this complaint in December 2021, Plaintiff did not in fact execute the applications at issue in the instant matter, necessary for requesting a passport for M.S. and for a passport and CRBA for S.S., until January 13, 2022.[3]  *See* Ex. A to Pl.'s Decl., ECF No. 29; Admin. R. STATE 2-00001–2-00017, ECF No. 31.  Plaintiff attended an interview with the U.S. Embassy in Tokyo regarding these documents on January 13, 2022.  Pl.'s Ex Parte Decl. and Emer. Mot. for Order to Compel Passport Issuance at 1, ECF No. 7; Admin. R. STATE 2-00096, 2-00099.  With each application for the passports for M.S. and S.S., Plaintiff included a Form DS-5525, or a "Statement of Exigent/Special Family Circumstances," indicating that: (1) he had been unable to contact Ms. Suzuki, the "non-applying" parent; (2) Ms. Suzuki had "left [an]

---

[2] Through his complaint and numerous subsequent filings, Plaintiff also sought to raise other claims that this Court addressed in its September 28, 2022 opinion.  *See generally* Mem. Op., ECF No. 42.  In his opposition to Defendant's instant motion, Plaintiff also appears to make a belated attempt to raise a claim under 42 U.S.C. § 1983 against Defendant, the Federal Bureau of Investigation ("FBI"), and the Department of Justice for allegedly "refus[ing] to address the matter" or to respond to Plaintiff's communications.  Pl.'s Opp'n at 14, ECF No. 36.  As previously stated by this Court in *Stone I*, 42 U.S.C. § 1983 "does not create a cause of action against a federal actor nor does it waive the United States' sovereign immunity" and the Court would lack subject-matter jurisdiction over any such claim.  No. 19-cv-3273, 2020 WL 4260711, at *6 (D.D.C. July 24, 2020) (citing *Miango v. Dem. Rep. Congo*, 243 F. Supp. 3d 113, 134 (D.D.C. 2017)).  Thus, even if the Court construes Plaintiff's discussion of 42 U.S.C. § 1983 as a motion for leave to amend his complaint to add such a claim, the Court also denies the motion for leave as futile.  *See Stone*, 2022 WL 4534732, at *4.  Accordingly, the only claims that remain live are those related to the passports, CRBA, and Social Security number.  *See id.* at *6.

[3] In certain of Plaintiff's communications with Defendant, he also appears to have sought a "replacement CRBA" for M.S. at certain points in time.  *See, e.g.*, Admin. R. STATE 2-00062, 2-02295, 2-02302, ECF No. 31.  Neither Plaintiff's complaint nor his opposition to Defendant's motion seeks this CRBA for M.S.; instead, they seek only a CRBA for S.S.  *See* Compl. ¶¶ 119–30; Pl.'s Opp'n 8–12.  The Court therefore addresses only the issue of a CRBA for S.S. here.

abduction note resulting in [the] U.S. Tokyo Embassy attempting [a] child welfare check;" and (3) there were "[e]mergency custody proceedings pending." *Id.* STATE 2-00003, 2-00011. Per the activity log entries in the administrative record, Defendant described the embassy interview and supporting documentation for the applications in relevant part as follows:

> Only US citizen father Jack Stone present at interview. Claims exigent circumstances should justify departure from two-parent consent and child's personal appearance. Has submitted DS5525 and over 50 pages of supporting documents purporting to demonstrate exigency because of the mother's instability and suggesting the children's health and safety are being endangered by being in their mother's care. Also claims he has not been able to reach the mother or children since November 1, his last day of detention following his latest arrest. Also suggests exigency by claiming his own situation is untenable and precarious due to police surveillance of his movements, a racist society, and the inability to obtain a visa for a period longer than six months (NB his latest visa was renewed through June 23, 2022), which prevents him from securing employment.

*Id.* STATE 2-00096, 2-00099. On January 14, 2022, Defendant issued Information Request Letters setting out requirements that M.S. and S.S.'s applications would need to meet to be processed. *Id.* STATE 2-00104–2-00106. In each case, the child would be required to make a personal appearance and Plaintiff would need to submit "[a]ny other document that indicates that an application can be made by one parent or legal guardian consistent with 22 CFR 51.28(a)(3)." STATE 2-00105–2-00106. In addition, both requirements would need to be met "within ninety (90) days" of the date of the letters, or else the applications "may be denied." *Id.*

On April 15, 2022, Defendant issued letters denying the applications for passports for M.S. and S.S. and a CRBA for S.S. *Id.* STATE 2-00107–2-00109. Defendant's letter denying M.S.'s application for a passport stated, while citing 22 C.F.R. § 51.28, that Plaintiff had provided "insufficient" information showing that Plaintiff had "sole authority to apply for, and receive, a passport" for M.S. and that Plaintiff had also "failed to demonstrate that an exception to the personal appearance requirement must be made for [M.S.]" *Id.* STATE 2-00108; *see also id.* STATE 2-00097 ("CRBA and PPT App received, but only father has signed. IRL letter given

4

requesting Notarized DS-3053 from mother and personal appearance of child. More than 90 days has since expired and IRL not satisfied."). Defendant's letter regarding S.S. reiterated these same reasons for denying S.S.'s CRBA and passport applications, while adding that "the embassy may require the minor applicant's in-person appearance for an application for Consular Report of Birth Abroad in order to establish that he is a U.S. citizen pursuant to 22 C.F.R. § 51.45." *Id.* STATE 2-00109.

### B.  PROCEDURAL BACKGROUND

On April 18, 2022, the Court issued a minute order noting that one of Plaintiff's "declarations" in this case had referred to "arbitrary agency action" while attaching Defendant's April 15, 2022 denial letters. As explained in its minute order, the Court construed this "declaration" as a motion to file a supplemental pleading challenging Defendant's final agency action under the APA, and ordered that Defendant file a dispositive motion in response. Defendant filed the administrative record in this matter on May 18, 2022, noting that, because "[Plaintiff's] long history with the Department is relevant to his applications, the entire [administrative record] from [Plaintiff]'s prior litigation regarding the passport application for M.S. is incorporated by reference." Cert. Admin. R. ¶ 4, ECF No. 31-7. In response to the Court's order, Defendant also then filed the instant motion, styled as a "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment," on July 8, 2022. Def.'s Mot. Summ. J., ECF No. 34. Plaintiff submitted an opposition to Defendant's motion on August 10, 2022. *See* Pl.'s Opp'n. Defendant submitted a reply in support of its motion on September 23, 2022. Def.'s Reply in Supp. Mot. Summ. J., ECF No. 40.

First, the government contends that the U.S. Embassy in Tokyo is not a proper defendant in this case and should be dismissed. Mem. in Supp. Def.'s Mot. Summ. J. at 1 n.1, ECF No. 34-

2. Second, citing this Court's opinion in *Stone I* that declined to sanction Plaintiff at the time but noted that the Court "would be within its authority to impose dismissal as a sanction if [Plaintiff] brings new claims or tries to resuscitate his old ones," No. 19-cv-3273, 2021 WL 1110735, at *4 (D.D.C. Mar. 23, 2021), Defendant requests that the Court dismiss Plaintiff's complaint with prejudice as a sanction for "his prior complete disregard for the Court," Mem. in Supp. Def.'s Mot. Summ. J. at 6 n.5. Defendant further asks that the Court "enjoin[] [Plaintiff] from any further filings regarding these issues without advance permission by the Court," considering his "belligerence and vexatious and frivolous filings." *Id.* at 20.

In addition, Defendant argues that it "carefully considered whether Plaintiff had satisfied the two-parent consent requirement" for the issuance of passports and determined that Plaintiff had not demonstrated sufficiently that exigent or special family circumstances existed such that the passports should be issued for M.S. and S.S. without Ms. Suzuki's consent. *Id.* at 16–18; Def.'s Reply in Supp. Mot. Summ. J. at 3–5. In support, Defendant cites this Court's opinion in *Stone I*, Def.'s Reply in Supp. Mot. Summ. J. at 4 n.2, wherein the Court concluded that the government's denial of M.S.'s previous passport application for lack of two-parent consent was not arbitrary, capricious, or an abuse of discretion, *Stone I*, No. 19-cv-3273, 2020 WL 6701078, at *6 (D.D.C. Nov. 12, 2020), *aff'd*, No. 20-5360, 2021 WL 2255016 (D.C. Cir. May 17, 2021). Defendant contends further that it was also within its discretion to refuse to waive the requirement that the children appear personally for the passport and CRBA applications. Def.'s Mem. in Supp. Mot. Summ. J. at 18–19; Def.'s Reply in Supp. Mot. Summ. J. at 6. According to Defendant, enforcing this requirement was not arbitrary and capricious, particularly when "Plaintiff has previously raised serious concerns about whether S.S. is even his child" and consular officers may observe through in-person interaction "intangible or subjective factors

6

which are critical in determining if there is a *bona fide* relationship between" S.S. and Plaintiff. Def.'s Reply in Supp. Mot. Summ. J. at 6–7.

In response, Plaintiff: (1) rejects the assessment that Plaintiff has not shown exigent or special family circumstances sufficient to circumvent the two-parent consent requirement for passports, Pl.'s Opp'n at 5–8; (2) contests the interpretation of the regulations cited by Defendant to support requiring the children to appear in person for the applications, *id.* at 8–12; (3) argues that the in-person appearance requirement should be waived even if required by the regulations, *id.* at 11–12; and (4) claims that Defendant's denial of S.S.'s CRBA application is "sloppily crafted harassment . . . because Plaintiff has sued the [Department of State]," *id.* at 11.[4] Defendant's motion is now ripe for decision.

### III. LEGAL STANDARD

#### A. Subject-Matter Jurisdiction

Federal courts are courts of limited jurisdiction, *see Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004), and must therefore address jurisdiction as a "threshold matter," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). To determine whether jurisdiction exists, a court may "undertake an independent investigation to assure itself of its own subject matter jurisdiction" and "consider facts developed in the record beyond the complaint." *CFA Inst. v. Andre*, 74 F. Supp. 3d 462, 465 (D.D.C. 2014) (internal

---

[4] Plaintiff also includes arguments of varying depth regarding Defendant's request for an extension of time, his wife's visa application, Interpol notices, criminal charges against his wife, and "Goldman Act sanctions." *See generally* Pl.'s Opp'n. These arguments are all moot following the Court's opinion of September 28, 2022 and its minute order of September 23, 2022 granting Defendant's Motion for Extension of Time *nunc pro tunc*. Likewise, Defendant's arguments as to some of these issues are moot as well. *See* Def.'s Reply in Supp. Mot. Summ. J. at 7–8.

7

citations omitted). "Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Grell v. Trump*, 330 F. Supp. 3d 311, 316 (D.D.C. 2018).

### B. Administrative Procedure Act

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. Undertaking this review, a court has the power to hold unlawful and set aside agency action that the court finds "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." § 706(2)(A), (D).

The administrative agency "must compile for the Court all of the information that was either directly or indirectly considered in reaching its decision," *Nat'l Min. Ass'n v. Jackson*, 856 F. Supp. 2d 150, 156 (D.D.C. 2012) (quoting *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001)), such that the "administrative record includes all materials compiled by the agency that were before the agency at the time the decision was made," *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (cleaned up). There thus exists a "standard presumption that the 'agency properly designated the [a]dministrative [r]ecord.'" *Amfac Resorts*, 143 F. Supp. 2d at 12 (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)). "[I]t is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C.Cir.1984)); *see also Amfac Resorts*, 143 F. Supp. 2d at 10 ("[J]udicial review is normally confined to the administrative record.").

### C. Motion for Summary Judgment

Although styled as a "Motion to Dismiss or, in the Alternative, for Summary Judgment," Defendant's motion describes the standard for a motion for summary judgment in actions brought under the APA as the applicable legal standard, *see* Def.'s Mem. in Supp. Mot. Summ. J. at 12–13, and includes a "statement of material facts as to which there is no genuine dispute in support of its motion for summary judgment," Def.'s Statement of Material Facts at 1–2, ECF No. 34-1. Plaintiff's opposition appears to agree that "[t]here is no genuine dispute to any material fact raised in any underlying issue," and quotes Federal Rule of Civil Procedure 56(a). Pl.'s Opp'n at 4–5. Thus, the Court understands Defendant to be moving for summary judgment and applies the applicable standard for such a motion.

In APA cases, "motions for summary judgment are not decided according to Federal Rule of Civil Procedure 56," *Sage IT, Inc. v. Cissna*, 314 F. Supp. 3d 203, 207 (D.D.C. 2018), which "does not apply because of the court's limited role in reviewing the administrative record," *Fulbright v. McHugh*, 67 F. Supp. 3d 81, 89 (D.D.C. 2014) (quoting *Coe v. McHugh*, 968 F. Supp. 2d 237, 239 (D.D.C. 2013)). "Instead of looking for genuine disputes of material fact in the parties' *pleadings*, therefore, the district court 'determine[s] whether or not as a matter of law the evidence *in the administrative record* permitted the agency to make the decision it did.'" *Stone I*, 2020 WL 6701078, at *4 (quoting *Kaiser Found. Hosps. v. Sebelius*, 828 F. Supp. 2d 193, 198 (D.D.C. 2011)) (emphasis in original). As described above, "the court must limit its review to the 'administrative record' and the facts and reasons contained therein to determine whether the agency's action was 'consistent with the relevant APA standard of review.'" *Policy & Research., LLC v. United States Dep't of Health & Human Servs.*, 313 F. Supp. 3d 62, 74 (D.D.C. 2018) (quoting *Ho–Chunk, Inc. v. Sessions*, 253 F. Supp. 3d 303, 307 (D.D.C. 2017)).

## IV.  ANALYSIS

First, as an initial matter, the Court dismisses the U.S. Embassy in Tokyo and the Department of State CA/OCS/CI as improper defendants under the APA, substituting instead the United States Department of State as the proper defendant in this case.  Second, the Court declines for now to dismiss Plaintiff's claims or to enjoin Plaintiff from submitting additional filings without permission from the Court as a sanction.  If Defendant believes that Plaintiff's improper actions in *Stone I* merit dismissal of this case as a sanction, or that Plaintiff has engaged in sanctionable conduct in this current matter, it should submit a separate motion supported by citation to applicable authority and, as needed, evidence.

Third, although Defendant's briefs provide potentially rational explanations for why the agency purportedly denied the passport and CRBA applications, these explanations do not appear to be reflected in the administrative record.  The administrative record does not evince consideration of Plaintiff's claimed exigent or special family circumstances, nor does it show why Defendant decided that it would not waive, if waiver was even possible, the two-parent consent and in-person appearance requirements for the applications.  Absent such a connection in the record between the evidence and Defendant's conclusions, the Court must find that Defendant's denials of the passport and CRBA applications lack support in the record and remand the matter to Defendant for further explanation of the decisions.  To be clear, this remand does not mean that the Court is ordering Defendant to issue the passports and the CRBA as Plaintiff requests.  This remand requires only that, as required under the APA, Defendant engage in further consideration consistent with this opinion and, irrespective of whether Defendant decides to affirm the prior denials of the applications, articulate a reasoned explanation for its action after adequately grappling with the serious issues raised in Plaintiff's applications.

**A. Dismissal of Defendants and Substitution of State Department**

The government contends that the Court should dismiss the U.S. Embassy in Tokyo as a defendant given 5 U.S.C. § 703, which states: "If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer." *See* Def.'s Mem. in Supp. Summ. J. at 1 n.1. Though the government does not elaborate further, the Court understands it to be arguing that the Court lacks subject-matter jurisdiction because the U.S. Embassy in Tokyo, as an entity within the United States Department of State, is not a legal entity in its own right that can be sued under its own name under the APA. *See Grell v. Trump*, 330 F. Supp. 3d 311, 319 (D.D.C. 2018) (citing § 703 in dismissing the Chairman of the Joint Chiefs of Staff as a defendant and stating that the Joint Chiefs of Staff is "an entity within the DOD that advises the president on military matters, but it is not an agency unto itself") (cleaned up); *Hale v. Collis*, No. 21-cv-1469, 2022 WL 3016747, at *10 (D.D.C. July 29, 2022) (dismissing the Bureau of Prisons' Counter Terrorism Unit as a defendant because, as a sub-division of BOP, it "lacks an independent legal existence and therefore cannot be sued under its own name"); *see also Toaz v. Lane*, No. 3:17-CV-01425, 2020 WL 5200628, at *8 n.7 (M.D. Pa. May 1, 2020) (declining to construe complaint as encompassing an APA claim and noting court's lack of subject-matter jurisdiction over any such APA claim because complaint failed to meet § 703's requirement to name "the United States, the agency by its official title, or the appropriate officer").

The government does not raise the same argument with respect to the second defendant—the United States Department of State CA/OCS/CI, or the Office of Children's Issues within the State Department's Bureau of Consular Affairs, *see* U.S. Dep't of State, 7 FAM § 011(e). But the Court notes that the government's objections to the U.S. Embassy in Tokyo as a defendant—

11

that it is merely a sub-division of the State Department and thus cannot itself be sued under the APA—apply to the Office of Children's Issues as well. The Court therefore dismisses both the U.S. Embassy in Tokyo and the United States Department of State CA/OCS/CI as defendants, and instead substitutes the United States Department of State as the proper defendant. *See, e.g.*, *Flaherty v. I.R.S.*, 468 F. Appx. 8, 9 (D.C. Cir. 2012) (affirming district court's substitution of the Internal Revenue Service as sole defendant in case because the Freedom of Information Act only authorizes suits against certain executive branch agencies); *Sonds v. Huff*, 391 F. Supp. 2d 152, 155 (D.D.C. 2005), *aff'd*, No. 05-5428, 2006 WL 3093808 (D.C. Cir. June 22, 2006) (substituting the Department of Justice as defendant because the named defendant, the Drug Enforcement Administration, is a component of DOJ).

### B. Sanction

As Defendant points out, during *Stone I*, Plaintiff willfully violated the Court's protective order that placed certain portions of the Foreign Affairs Manual under seal. 2021 WL 1110735, at *1–2. At the time, the Court warned Plaintiff that, while the Court would not then require him to show cause as to why he should not be sanctioned, Plaintiff's actions were "egregious enough to warrant dismissal as a sanction;" that it "would be within [the Court's] authority to impose dismissal as a sanction if [Plaintiff] brings new claims or tries to resuscitate his old ones;" and that "the Court may well hold [Plaintiff's] history of willful disobedience and attitude of disrespect against him." *Id.* at *2–4. Defendant contends that Plaintiff has attempted here to revive the claims at issue in *Stone I* and thus requests that the Court dismiss Plaintiff's claim "with prejudice as sanction for [Plaintiff's] disregard for the Court's order sealing the Foreign Affairs Manual," particularly in light of Plaintiff's "inappropriate" behavior, "belligerence," and "vexatious and frivolous filings." Def.'s Mem. in Supp. Mot. Summ. J. at 20.

Defendant has not thus far demonstrated why Plaintiff's sanctionable conduct in *Stone I* should lead to dismissal of this case. The focus of the Court's *Stone I* opinion was Plaintiff's willful violation of the Court's protective order, which would have warranted dismissal of Plaintiff's claims had the Court had any such claims pending before it at the time, and potential attempts by Plaintiff to revive his case either by making new claims or reviving his old ones. 2021 WL 1110735, at *2, 4. Notably, the Court cited *Mikkilineni v. Penn Nat'l Mut. Casualty Ins. Co.*, 271 F. Supp. 2d 151 (D.D.C. 2003), in which a court dismissed a *pro se* plaintiff's case because the plaintiff filed a complaint identical to one previously stricken and attempted to revive his first action. *Id.* at 155. The Court then also looked to *Reynolds v. U.S. Capitol Police Bd.*, 357 F. Supp. 2d 19 (D.D.C. 2004), wherein a court dismissed a plaintiff's case because the plaintiff filed a second complaint nearly identical to one that was previously dismissed and asked to add that claim to another matter against the defendant. *Id.* at 22–23. The Court drew its comparisons to those cases to warn Plaintiff that the Court would take action if he engaged in similar tactics to revive his suit, given that any such revived claims would have been dismissed had they been pending when the Court considered the possibility of a sanction in *Stone I*.

Defendant has not shown that Plaintiff's instant matter has crossed the red line laid down by the Court in *Stone I*. Despite Defendant's contention that Plaintiff is attempting to revive the same claims as those in *Stone I*, Defendant also recognizes that this matter is distinct from *Stone I* because this case stems from new applications filed in January 2022. Def.'s Mem. in Supp. Mot. Summ. J. at 20. Defendant argues, however, that, even if Plaintiff has ostensibly raised new claims in this matter, the "crux of the issue is the same." *Id.* Defendant also claims that the underlying circumstances of the two cases remain fundamentally the same. *See* Def.'s Reply in Supp. Mot. Summ. J. at 5. But Defendant does not cite to any authority illustrating that the

13

Court should dismiss Plaintiff's current case because it is substantially similar to, even if not the same as, his previously dismissed case. If Defendant believes that Plaintiff's sanctionable conduct in *Stone I* merits dismissal of this case, it should file a separate motion supported by applicable authority.

Defendant argues further that the Court should "make good on its order" in *Stone I* because this is Plaintiff's "fourth lawsuit regarding his children, wife, and his claims of abduction," and Plaintiff "has plainly become a vexatious litigant, filing numerous meritless cases and motions," and engaged in "inappropriate" behavior. Def.'s Mem. in Supp. Mot. Summ. J. at 20. Thus, Defendant suggests that Plaintiff has as part of this matter engaged in conduct that itself, considering Plaintiff's history with this Court, provides the basis for a sanction. The Court notes with particular interest Defendant's assertion in its reply that "Plaintiff continues to live in Japan, continues to pursue his legal remedies there, [is in] contact with the mother and, to the Department's knowledge, is engaged in shared child-rearing with regard to M.S. but for his brief incarceration by the Japanese authorities." Def.'s Reply in Supp. Mot. Summ. J. at 5 (footnote omitted). Defendant offers no evidence in support of the claims that Plaintiff is currently in contact with Ms. Suzuki and is involved with raising either child. *See FastShip, LLC v. United States*, 892 F.3d 1298, 1309 (Fed. Cir. 2018) ("[A]ttorney argument is not evidence.") (citation omitted). But again, if Defendant possesses evidence that Plaintiff has engaged in conduct here that merits dismissal of his case, it should file a separate motion that is supported by applicable authority and contains relevant evidence. For now, however, the Court will not require Plaintiff to show cause as to why he should not be sanctioned, nor will the Court enjoin Plaintiff from submitting additional filings without permission from the Court.

### C.  Arbitrary and Capricious Review

"The requirement that agency action not be arbitrary and capricious includes a requirement that the agency adequately explain its result." *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (quoting *Pub. Citizen, Inc. v. Fed. Aviation Agency*, 988 F.2d 186, 197 (D.C. Cir. 1993)); *see also Tourus Recs., Inc. v. Drug Enf't Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001) ("A fundamental requirement of administrative law is that an agency set forth its reasons for decision; an agency's failure to do so constitutes arbitrary and capricious agency action.") (cleaned up).  The agency's explanation "must minimally contain 'a rational connection between the facts found and the choice made.'" *Dickson*, 68 F.3d at 1404 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  It need not be "a model of analytic precision to survive a challenge," and "[a] reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Id.* (quoting *Bowman Transp., Inc. v. Arkansas–Best Motor Freight Sys.*, 419 U.S. 281, 286 (1974)). In some cases, courts have even "been willing to conclude that an agency implicitly considered and rejected evidence it did not explicitly address where that evidence was obviously of no value," and to affirm decisions "when those decisions were thinner than they should have been." *Hensley v. United States*, 292 F. Supp. 3d 399, 411 (D.D.C. 2018) (cleaned up).

Even so, courts "may not supply a reasoned basis for an agency action that the agency itself did not give in the record under review." *Id.* (quoting *Pierce v. SEC*, 786 F.3d 1027, 1034 (D.C. Cir. 2015)).  The "agency must cogently explain why it has exercised its discretion in a given manner . . . and that explanation must be sufficient to enable [a court] to conclude that the agency's action was the product of reasoned decisionmaking." *Stewart v. Stackley*, 251 F. Supp. 3d 138, 156 (D.D.C. 2017) (quoting *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006)).

15

"[A]n agency may not provide conclusory statements in place of genuine reasoning, because '[c]onclusory explanations for matters involving a central factual dispute where there is considerable evidence in conflict do not suffice to meet the deferential standards of [judicial] review.'" *Hensley*, 292 F. Supp. 3d at 411 (quoting *AT&T Wireless Servs., Inc. v. FCC*, 270 F.3d 959, 968 (D.C. Cir. 2001)). Additionally, "[a]n agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action within the meaning of [5 U.S.C.] § 706." *Butte Cnty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010); *see also Stellar IT Sols., Inc. v. United States Citizenship & Immigration Servs.*, No. 18-cv-2015, 2018 WL 6047413, at *7 (D.D.C. Nov. 19, 2018) ("[The agency] was free to take issue with the substance, credibility, or weight of the evidence submitted and explain why it took such issue, but the agency was not permitted to pretend the evidence did not exist.").

In this case, the administrative record does not contain an adequate explanation for why Defendant denied the passport and CRBA applications. The administrative record shows that Defendant received the applications and supporting documentation, interviewed Plaintiff, and was aware of the various reasons put forward by Plaintiff for why exigent or special family circumstances existed such that Defendant's usual requirements for the passport and CRBA applications should be waived. *See* Admin. R. STATE 2-00096, 2-00099. But the administrative record, despite being over 2,300 pages long, is devoid of any indications of what consideration Defendant gave to the applications. It shows that Defendant required Plaintiff to meet the two-parent consent and in-person appearance requirements. *Id.* STATE 2-00105–2-00106. But it does not demonstrate that Defendant grappled with any of Plaintiff's proffered arguments or documentation, and states only that Defendant ultimately deemed Plaintiff's documentation "insufficient" for demonstrating that he had "sole authority to apply for, and

receive, a passport" for the children. *Id.* STATE 2-00108–2-00109. In short, the administrative record does not show how Defendant connected the dots between the evidence before the agency and the denials, or why it concluded that Plaintiff's arguments or documentation were insufficient. *See, e.g.*, *Barchart.com v. Koumans*, No. 19-cv-00556, 2020 WL 820878, at *3 (D.D.C. Feb. 19, 2020) (finding arbitrary and capricious agency action that did not acknowledge or "grapple with [the] substance" of a "key piece of evidence").

The sparseness of the current administrative record is evident when juxtaposing the record against that for Defendant's denial of the previous application for M.S.'s passport in *Stone I*. This Court in *Stone I* concluded that the denial was not arbitrary and capricious because the government "articulated a sufficient connection between the record and the decision to require Suzuki's consent and, when it was not provided, to deny [Plaintiff]'s application." 2020 WL 6701078, at *6. In particular, the administrative record there showed that the U.S. Embassy in Tokyo sought the concurrence of State Department colleagues in Washington, D.C., who agreed with the denial "'[b]ased on the extreme lack of credibility of the DS-5525,' Suzuki's 'express concerns to issuance,' and [the] finding that Suzuki had not abandoned the child." *Id.* at *2 (quoting *Stone I*, No. 19-cv-3273, Defs.' Mot. Summ. J. 12–13, ECF No. 120 (citation omitted)). The record also contained the government's clear explanation that the passport application should be denied "based on all available information, including statements of the mother requesting that we do not issue a passport, inconsistencies with father's statements as to location of child, welfare of child, and relationship with mother, and all provided documentation." *Id.* at *5 (quoting *Stone I*, No. 19-cv-3273, Defs.' Mot. Summ. J. 15–16, ECF No. 120).

The Court does not refer to the prior administrative record to suggest that Defendant's explanation here was required to achieve the same level of depth, but rather to illustrate that

17

Defendant's reasoning in its prior decision was readily discernible based on the record there, which showed that Defendant considered carefully the evidence before it in issuing that denial. Here, the administrative record does not contain adequate indication of Defendant's reasoning for denying the applications at issue. Even accounting for Defendant's incorporation of the prior administrative record by reference, the Court cannot simply assume that the same reasons for Defendant denying M.S.'s prior passport application apply to the rejection of M.S.'s and S.S's applications in the instant case. Nearly two years had passed between the filing of the administrative record in *Stone I* and the agency's decisions at issue here; this case also involves new applications and, at least according to Plaintiff, changed circumstances. Defendant has not demonstrated that it has considered those intervening events, to the extent any might be relevant to the applications.

Defendant's briefing attempts to fill in the blanks where the administrative record is lacking by arguing that there "have been very few changes to this family's circumstances" and that this remains the kind of marital dispute to which the two-parent consent rule should apply, Def.'s Reply in Supp. Mot. Summ. J. at 5–6; that Plaintiff's claimed exigent or special family circumstances facially did not warrant an exception to the rule requiring two-parent consent, Def.'s Mem. in Supp. Mot. Summ. J. at 17–18; and that Plaintiff lacks credibility given his history of inconsistent statements, *id.* at 19 & n.11. The reasons given in Defendant's briefing may have indeed factored into Defendant's decision-making here. But, again, such reasoning is not evident from the administrative record, and "courts may not accept [counsel's] *post hoc* rationalizations for agency action." *Remmie v. Mabus*, 898 F. Supp. 2d 108, 120 (D.D.C. 2012) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). "It is well-

established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Stewart*, 251 F. Supp. 3d at 157 (quoting *State Farm*, 463 U.S. at 50).

Consistent with its circumscribed role in reviewing APA action, the Court will not articulate a reason for Defendant's action when the reason is not evident from the administrative record itself. Nor will the Court "conclude that [Defendant] 'implicitly' considered and rejected" the evidence because "that evidence was obviously of no value." *Hensley*, 292 F. Supp. 3d at 411 (quoting *Roberts v. United States*, 741 F.3d 152, 159 (D.C. Cir. 2014)). As the Court has acknowledged, Plaintiff's claims "ring strikingly familiar" to those that Defendant has heard over the last several years and that the Court has also previously adjudicated. *Stone*, 2022 WL 4534732, at *13. Nevertheless, Plaintiff has submitted new applications and alleged changed circumstances that Defendant is obligated to give due consideration, even if Defendant ultimately rejects Plaintiff's arguments. The Court must therefore conclude that Defendant's action lacks adequate support in the record.

"When an agency provides a statement of reasons insufficient to permit a court to discern its rationale, or states no reasons at all, the usual remedy is a 'remand to the agency for additional investigation or explanation.'" *Tourus Recs.*, 259 F.3d at 737 (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). The Court thus will remand the matter to Defendant for further explanation of the decisions on the passport and CRBA applications.[5] To be clear, this remand—and the Court's conclusion that Defendant's action lacked adequate support in the administrative record—does not mean that this Court is ordering Defendant to issue the passports

---

[5] As noted in *Stone I*, a CRBA "is a necessary predicate to the issuance of a Social Security card." 2020 WL 6746925, at *7 n.7. Because the Court remands Plaintiff's claim regarding the issuance of the CRBA, the Court must necessarily also remand Plaintiff's claim related to the issuance of a Social Security card.

and the CRBA as Plaintiff requests. This remand requires only that, as required under the APA, Defendant engage in further consideration consistent with this opinion and, irrespective of whether Defendant decides to affirm the prior denials of the applications, articulate a reasoned explanation for its action after adequately grappling with the serious issues raised in Plaintiff's applications. Furthermore, Defendant shall complete this remand and issue a new decision within 45 days from the date of this opinion.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for summary judgment. Accordingly, it is hereby **ORDERED** that Defendant's motion for summary judgment is **GRANTED** insofar as the United States Embassy in Tokyo and the United States Department of State CA/OCS/CI are dismissed as defendants and the United States Department of State is substituted as the sole defendant in this case. It is **FURTHER ORDERED** that the remainder of Defendant's motion for summary judgment is **DENIED**. It is **FURTHER ORDERED** that the matter is **REMANDED** to the agency for further explanation of its decisions consistent with this opinion within 45 days of the date of this opinion. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  November 22, 2022                                       RUDOLPH CONTRERAS
                                                                United States District Judge