**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JACK STONE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 21-3244 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 67, 99, 126, 127, |
| | : | | 130, 131, 132, |
| | : | | 135, 136, 138, |
| | : | | 140, 141, 142, 144 |
| | : | | |
| UNITED STATES DEPARTMENT | : | | |
| OF STATE, | : | | |
| | : | | |
| Defendant. | : | | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

Mr. Jack Stone ("Plaintiff"), proceeding *pro se*, brings this suit against the United States

Department of State ("Defendant" or "State Department") under the Administrative Procedure

Act ("APA"). [1]   Plaintiff principally challenges as arbitrary and capricious the agency's

decisions to deny his children, M.S. and S.S., their U.S. passports without both parents' consent,

as well as a Consular Report of Birth Abroad ("CRBA") for S.S. Previously, this Court held that

Defendant's reasons for denying Plaintiff's passport and CRBA applications did not appear to be

reflected in the administrative record and remanded the matter to Defendant for further

consideration and explanation of the denials. Thereafter, Defendant reconsidered Plaintiff's

---

[1] The Court previously dismissed the U.S. Embassy in Tokyo and the Department of State CA/OCS/CI as improper defendants under the APA, substituting instead the Department of State as the proper defendant in this case. *See* Mem. Op. Den. in Part Def.'s Mot. Summ. J. at 11–12, ECF No. 52.

applications and again denied them, offering supplemental analysis purportedly demonstrating that it grappled with the new issues raised in Plaintiff's applications. Now, Defendant has again moved for summary judgment on Plaintiff's claims, contending that the re-denials were not arbitrary or capricious. After careful consideration of the record and the parties' papers, the Court grants Defendant's Renewed Motion for Summary Judgment for the reasons explained below.

## II. BACKGROUND[2]

### A. Factual Background

On December 6, 2021, Plaintiff filed a complaint alleging that his estranged wife, Miyuki Suzuki, had abducted his two children, M.S. and S.S., to an unknown location and that he had been unable to contact Ms. Suzuki since November 1, 2021. Compl. ¶¶ 1, 3, ECF No. 1. Plaintiff alleges that Defendant's refusal to issue passports for the two children is in part "responsible for the current reabduction situation," *id*. ¶ 43, which has also prevented Plaintiff from being able to obtain a CRBA and Social Security number for S.S., *id*. ¶¶ 120–29. Plaintiff's complaint objects to Defendant's requirements for issuing the passports for M.S. and S.S. and the CRBA for S.S.— which Plaintiff has been unable to meet—as "arbitrary." *Id.* ¶¶ 30, 126–28. Plaintiff's complaint seeks an order compelling Defendant to: (1) issue passports for the two children, *id.* ¶¶ 52–54; and (2) waive the requirement that S.S. appear in person for an application for a CRBA and then

---

[2] This case comes to the Court with a complex factual and procedural history that has been recounted in several of this Court's prior opinions in this matter, as well as in Plaintiff's earlier case before this Court, *Stone v. U.S. Embassy Tokyo*. *See Stone v. U.S. Embassy Tokyo*, No. 19-3273 (D.D.C. Oct. 30, 2019) ("*Stone I*"). The facts and allegations in the two cases overlap substantially. The Court therefore presumes familiarity with those prior opinions and recounts here only the facts and allegations relevant to the motions currently before it.

issue the CRBA and a Social Security number for S.S. upon proof that S.S. satisfies the requirements for U.S. citizenship, *id.* at 17, ¶¶ 119–30.

Despite filing the Complaint in December 2021, Plaintiff did not execute the applications currently at issue for his children until January 13, 2022.  For each application, Plaintiff included a Form DS-5525, or a "Statement of Exigent/Special Family Circumstances," stating that: (1) he had been unable to contact Ms. Suzuki, the "non-applying" parent; (2) there were ongoing "emergency custody proceedings" concerning his children pending in Florida; and (3) that his wife had left an "abduction note." Admin. R. STATE2-0003, STATE2-0011, ECF No. 31.  Defendant subsequently issued Information Request Letters setting out the requirements needed from Plaintiff, including the personal appearance of the children and "[a]ny other document that indicates that an application can be made by one parent or legal guardian consistent with 22 CFR 51.28(a)(3)."  *Id*. STATE2-00104–106.  In addition, both requirements were to be met "within ninety (90) days" of the dated request, or else the applications "may be denied."  *Id*.

On April 15, 2022, Defendant issued letters to Plaintiff denying the applications for passports for both children and a CRBA for S.S., stating that Plaintiff "failed to demonstrate that an exception to the personal appearance requirement" must be made for each minor, and the information Plaintiff provided to show sole authority for applying for their passports was "insufficient."  *Id*. STATE2-00108.  Plaintiff also failed to provide a notarized Form DS-3053 ("Statement of Consent: U.S. Passport Issuance to a Child") from the mother within the ninety days allotted.  *Id*.

On April 18, 2022, the Court issued a minute order noting that one of Plaintiff's "declarations" in this case had referred to "arbitrary agency action" while attaching Defendant's

April 15, 2022 denial letters. Min. Order (Apr. 18, 2022). As explained in its minute order, the Court construed this "declaration" as a motion to file a supplemental pleading challenging Defendant's final agency action under the APA and ordered that Defendant file a dispositive motion in response. *Id*. Defendant filed the administrative record in this matter on May 18, 2022, noting that, because "[Plaintiff's] long history with the Department is relevant to his applications, the entire [administrative record] from [Plaintiff]'s prior litigation regarding the passport application for M.S. is incorporated by reference." Admin. R. ¶ 4, ECF No. 31-7. In response to the Court's order, Defendant also then filed a motion, styled as a "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment," on July 8, 2022, which the Court construed as a motion for summary judgment. Def.'s Mot. Summ. J., ECF No. 34; Mem. Op. Denying in Part Def.'s Mot. Summ. J. at 9.

Amongst its claims, Defendant argued that it "carefully considered whether Plaintiff had satisfied the two-parent consent requirement" for the issuance of passports and determined that Plaintiff had not sufficiently demonstrated that exigent or special family circumstances existed such that the passports should be issued without the mother's consent.  Def.'s Mot. Summ. J. at 16–18; Def.'s Reply Supp. Mot. Summ. J. at 3–5, ECF No. 39.  Furthermore, Defendant argued that its denial decision was not arbitrary nor capricious because "Plaintiff has previously raised serious concerns about whether S.S. is even his child" and in-person interaction at the consular office could note "intangible or subjective factors which are critical in determining if there is a bona fide relationship between" S.S. and Plaintiff.  Def.'s Reply Supp. Mot. Summ. J. at 6–7.

 On November 22, 2022, the Court denied in part Defendant's Motion for Summary Judgment. Mem. Op. Den. in Part Def.'s Mot. Summ. J. The Court held that although Defendant's briefs offered potentially rational explanations for the agency's denial of the

passport and CRBA applications, those explanations were not reflected in the administrative record. *Id*. at 16–19. The record did not demonstrate that the agency considered Plaintiff's asserted exigent or special family circumstances, nor did it explain why Defendant declined to waive the two-parent consent and in-person appearance requirements. *Id*. at 18. Without a clear connection in the record between the evidence presented and Defendant's conclusions, the Court held that the denials lacked adequate support and remanded the matter to Defendant for further consideration and explanation of its decisions. *Id*. at 18–20.

On December 20, 2022, after the Court's remand, Defendant again denied Plaintiff's applications, concluding that Plaintiff had failed to demonstrate any exigent or special family circumstances to waive the two-parent consent rule, as well as the personal appearance requirement. Suppl. Admin. R. STATE2-00124–27.  In January 2023, shortly after Defendant re-denied Plaintiff's applications, Japanese authorities arrested and incarcerated Plaintiff. Def.'s Notice, ECF No. 70. He remained incarcerated in Japan until October 2025. Def.'s Status Report, ECF No. 113.

### B.  Procedural Background

In March 2023, Defendant filed a Renewed Motion for Summary Judgment.  Def.'s Renewed Mot. Summ. J., ECF No. 67. The claims that remain "live," and now ripe for this Court's consideration, concern: (i) Defendant's re-denial of Plaintiff's U.S. passport applications for both children; (ii) Defendant's re-denial of Plaintiff's CRBA application for S.S.; and (iii) Plaintiff's associated request that Defendant issue S.S. a Social Security number. *See generally* Mem. Op. Den. in Part Def.'s Mot. Summ. J.

Per its motion, Defendant contends that the re-denials were not arbitrary or capricious because: (i) Defendant is not able to issue a Social Security number to S.S., even if the child

were granted a passport; (ii) Plaintiff failed to obtain the mother's (Ms. Suzuki's) consent or establish that an exception applied for "exigent or special family circumstances" under 22 C.F.R. §§ 51.28(a)(2), (5); (iii) and Plaintiff failed to present the children before the agency or establish that an exception applied to excuse the in-person appearance requirement under 22 C.F.R. § 51.28(a)(1). *See generally* Def.'s Renewed Mot. Summ. J. Alongside its motion, Defendant also submitted a Supplemental Administrative Record reflecting its reconsideration of Plaintiff's applications.  Suppl. Admin. R., ECF No. 68.

After Defendant filed its motion, the Court issued a *Fox*/*Neal* Order directing Plaintiff to respond, or otherwise, the Court would treat the motion as conceded. *See* Order, ECF No. 69. After Plaintiff failed to respond, Defendant notified the Court that Plaintiff had been arrested in Japan.  Def.'s Notice, ECF No. 70.  In September 2024, the Court ordered Defendant to re-serve its motion on Plaintiff. Min. Order (Sept. 26, 2024). Defendant then notified the Court that because Plaintiff was incarcerated abroad, and consular officers are not permitted to act as process servers, it was working to find a way to serve Plaintiff with its motion. Def.'s Status Report, ECF No. 84. After his release from incarceration in Japan, Plaintiff responded to Defendant's Renewed Motion for Summary Judgment in January 2025.  Pl.'s Resp, ECF Nos. 117, 120, 122.[3]  Defendant, however, failed to reply.[4]

---

[3] The Court construes Plaintiff's response as encompassing multiple filings. *See Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999) (holding that a court must read all of a *pro se* plaintiff's filings together).

[4] Plaintiff also filed a flurry of various documents and motions seeking various forms of relief beyond the scope of his initial complaint, including seeking leave to add additional Federal Tort Claims Act and *Bivens* claims, and an order imposing sanctions on Japan. *See, e.g.*, ECF Nos. 99, 103, 126, 127, 130–32, 135–36, 140–42. Because Plaintiff's documents and motions concern parties, facts, and/or issues not before this Court, it denies these motions and requests for relief. *See Sai v. Transportation Sec. Admin.*, 54 F. Supp. 3d 5, 8–9 (D.D.C. 2014); *see also Adair v. England*, 193 F.Supp.2d 196, 200 (D.D.C. 2002) (explaining that a court lacks jurisdiction over a motion when it raises issues different from those presented in the complaint);

### III.  LEGAL STANDARD

"Ordinarily, summary judgment is appropriate when the pleadings and the evidence demonstrate that 'there is no genuine dispute as to any material fact.'" *Ardmore Consulting Grp., Inc. v. Contreras-Sweet*, 118 F. Supp. 3d 388, 393–94 (D.D.C. 2015) (quoting Fed. R. Civ. P. 56(a)). The standard set forth in Rule 56(a) does not apply, however, when a court is reviewing a final agency action under the APA.  *See Roberts v. United States*, 883 F. Supp.2d 56, 62–63 (D.D.C. 2012). "Instead of reviewing the record for disputed facts that would preclude summary judgment, the function of the district court is a more limited one: 'to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Ardmore Consulting Grp., Inc*., 118 F. Supp. 3d at 393–94 (quoting *Kaiser Found. Hosps. v. Sebelius*, 828 F. Supp. 2d 193, 198 (D.D.C. 2011). This is a "narrow" inquiry; a

---

*Mississippi Ass'n of Cooperatives v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991) ("[L]eave to amend should be denied" where an amendment would "radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action."). Moreover, Plaintiff's motion for leave to amend comes several years after the Complaint was filed and would further delay the resolution of this long-standing case. *See* ECF No. 131; *Atchinson v. D.C.*, 73 F.3d 418, 426 (D.C. Cir. 1996) (affirming denial of leave to amend because "undue delay is a sufficient reason for denying leave to amend," noting the substantial delay between the filing of the complaint and the request for such leave).

Furthermore, Plaintiff has attached various materials to such documents and motions. To the extent Plaintiff is seeking to supplement the administrative record, Plaintiff has not overcome the "strong presumption" that Defendant properly designated its administrative record, *Marcum v. Salazar*, 751 F. Supp. 2d 74, 81 (D.D.C. 2010), nor does the Court find it necessary to consider any such extra-record evidence, *see Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989) (discussing the circumstances under which a court may consider extra-record evidence in an APA case). Some of those materials or documents post-date Defendant's re-denial decisions by several years. *See, e.g.*, ECF No. 142. The Court's review is thus limited to the administrative record and "should have before it neither more nor less information than did the agency *when it made its decision*." *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) (emphasis added). Therefore, Defendant's motion seeking an extension of time to respond to Plaintiff's motions, ECF No. 138, is denied as moot.

court "is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Nevertheless, a reviewing court must set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under the arbitrary-and-capricious standard, the agency must show that it considered the relevant evidence and offered a reasoned explanation that connects the facts it found to the decision it made. *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006). When an agency fails to provide such an explanation or when the record contradicts its conclusions, the court must set the action aside. *Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1020–21 (D.C. Cir. 1999). Put simply, the agency must articulate why it chose to act as it did. *Butte Cnty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010).

## IV.  ANALYSIS

After Defendant initially denied Plaintiff's passport and CRBA applications in April 2022, this Court remanded the matter for Defendant to reconsider and further explain its decisions. The Court held that "the administrative record [did] not show how Defendant connected the dots between the evidence before the agency and the denials, or why it concluded that Plaintiff's arguments or documentation were insufficient." Mem. Op. Den. in Part Def.'s Mot. Summ. J. at 17. The Court further explained that the record did not reflect consideration of Plaintiff's alleged changed circumstances, even though Plaintiff had submitted new applications that were materially different from those at issue in Plaintiff's prior case before this Court, *Stone I. Id.* At the same time, the Court emphasized that remand required only that Defendant engage in further consideration consistent with the Court's opinion and "articulate a reasoned

explanation for its action after adequately grappling with the serious issues raised in Plaintiff's applications." *Id*. at 20.

Following remand, in December 2022, Defendant again denied the applications and submitted a supplemental administrative record that provided additional analysis and explanation for those decisions. Having now reviewed the full record, the Court concludes that Defendant has adequately explained its re-denials. The Court therefore concludes that Defendant's decisions denying Plaintiff's passport and CRBA applications are neither arbitrary or capricious nor contrary to law. Because issuance of a CRBA is a necessary predicate to obtaining a Social Security number, Plaintiff's request that a Social Security number be issued to S.S. likewise fails.

### A. Mootness

The Court first addresses a preliminary matter. Defendant suggests that Plaintiff's Complaint is now moot in light of its December 2022 decisions denying Plaintiff's applications, observing that Plaintiff has not amended his Complaint to challenge those re-denials. Def.'s Renewed Mot. Summ. J. at 1. While it is true that Plaintiff has not filed a formal motion for leave to amend his Complaint to include allegations challenging the December 2022 re-denials, courts must construe *pro se* filings liberally. *See Richardson*, 193 F.3d at 548. In January 2026, after Japanese authorities released Plaintiff from years of incarceration, Plaintiff finally responded to Defendant's Renewed Motion for Summary Judgment, challenging the re-denials.[5] *See* Pl.'s Resp. The Court will construe Plaintiff's response as seeking to amend his Complaint to challenge the re-denials, and it will grant such leave. *See* Fed. R. Civ. P. 15(a)(2) ("The court

---

[5] While some of Plaintiff's arguments opposing Defendant's motion are non-responsive, it is nonetheless clear from Plaintiff's response, as well as subsequent filings, that he seeks to challenge the December 2022 re-denials. *See Richardson*, 193 F.3d at 548–49 (holding that a court must read all of a *pro se* plaintiff's filings together).

should freely give leave when justice so requires."); *see also Richardson*, 193 F.3d at 549

(holding that the district court should have construed a *pro se* plaintiff's response to a motion to

dismiss as an amendment to the complaint where the defendant would not have been prejudiced

by the amendment and the district court understood plaintiff to be seeking an amendment).

Defendant's re-denials occurred shortly before Japanese authorities incarcerated Plaintiff

abroad for over two (almost three) years, and Defendant experienced difficulties attempting to

serve the motion on Plaintiff (or providing him with a courtesy copy). Def.'s Status Reports,

ECF Nos. 84, 86, 89. Moreover, during the approximate month in between Defendant's re-

denials and Plaintiff's subsequent incarceration, Plaintiff expressed confusion as to what

Defendant's re-denial letters and the Court's remand entailed. *See* Pl.'s Mot. Clarification, ECF

No. 60 (Plaintiff appearing to construe Defendant's re-denial letters as impermissible

"alter[ations] [of] the record"). Considering these circumstances, the Court finds that no undue

delay or bad faith on Plaintiff's part exists here. *See Firestone v. Firestone*, 76 F.3d 1205, 1208

(D.C. Cir. 1996) ("[I]t is an abuse of discretion to deny leave to amend unless there is sufficient

reason, such as undue delay, bad faith or dilatory motive[,] repeated failure to cure deficiencies

by [previous] amendments [or] futility of amendment." (citation modified)). Moreover,

Defendant will not suffer any prejudice from such leave being given because, as explained

below, the Court grants summary judgment in Defendant's favor.[6] *See Council on American–*

*Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 324 (D.D.C. 2011)

(noting that the addition of allegations that "merely fine-tune the basis for the relief [sought],"

---

[6] The Court observes that although Defendant noted the absence of an amended complaint, it has not argued that it would be prejudiced if the Court granted Plaintiff leave to amend to challenge the December 2022 re-denials. *See* Def.'s Renewed Mot. Summ. J. at 1, 5 n.7. In fact, Defendant did not file a reply addressing Plaintiff's response, which plainly challenges those December 2022 re-denials.

while "not likely to change the outcome of the legal issues presented," is "rarely a bad thing" and "certainly does not provide a basis for denying leave to amend"). Therefore, the Court will consider the parties' arguments in relation to the December 2022 re-denials.

### B. Plaintiff's Passport and CRBA Applications and Social Security Number Request

At the U.S. Embassy in Tokyo, Plaintiff sought to obtain U.S. passports for his children, M.S. and S.S., and a CRBA for S.S., without the children's presence nor their mother's (Ms. Suzuki's) consent. Under 22 C.F.R. § 51.28, a parent applying for a minor's passport must obtain the consent of the non-applying parent or otherwise demonstrate the sole authority to apply. 22 C.F.R. § 51.28(a)(2). This requirement may, however, be excused in cases of "exigent or special family circumstances." *Id*. § 51.28(a)(5)(i)–(ii).[7]  In addition, the minor must appear in person, unless a senior passport authorizing officer waives that requirement. *Id*. § 51.28(a)(1). Defendant applies this in-person appearance requirement to CRBA applications as well. Def.'s Renewed

---

[7] "Exigent circumstances" are "time-sensitive circumstances in which the inability of the minor to obtain a passport would jeopardize the minor's health, safety, or welfare, or result in separation from the minor's traveling party." § 51.28(a)(5)(i). "Time-sensitive" means there is insufficient time, before the minor's emergency travel, to obtain the required parental consent or documentation of sole custody. *Id*. By contrast, "special circumstances" exist where the minor's family situation makes it exceptionally difficult for a parent to execute the application; where compelling humanitarian concerns would jeopardize the minor's health, safety, or welfare absent a passport; or where the minor's return to his or her home jurisdiction is necessary for a court to adjudicate or enforce a custody determination. *Id*. § 51.28(a)(5)(ii). Defendant follows internal guidelines, found in Chapter 8 of its Foreign Affairs Manual ("FAM"), in applying the two-parent consent and in-person appearance requirements and evaluating claims for exceptions. *Stone I*, No. 19-3273, 2020 WL 6701078, at *1 (D.D.C. Nov. 12, 2020), *aff'd*, No. 20-5360, 2021 WL 2255016 (D.C. Cir. May 17, 2021). Defendant's interpretation of its own regulations "must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Safari Club Int'l v. Zinke*, 878 F.3d 316, 326 (D.C. Cir. 2017) (quoting *Castlewood Prods., LLC v. Norton*, 365 F.3d 1076, 1082 (D.C. Cir. 2004)); *see also Barber v. Emmert*, No. 23-2465, 2025 WL 870364, at *5 n.10 (D.D.C. Mar. 20, 2025) (noting that deference to an agency's interpretation of its own regulations survives the Supreme Court's overruling of *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 840 (1984), as it is a separate doctrine originating from *Auer v. Robbins*, 519 U.S. 452 (1997)).

Mot. Summ. J at 14; Admin. R. STATE2-00115, STATE2-00122.  In his passport and CRBA applications, Plaintiff claimed "exigent circumstances" to overcome the two-parent-consent and in-person appearance requirements, alleging primarily that the mother, Ms. Suzuki, had "abducted" the children. On remand, Defendant again denied Plaintiff's applications, concluding that Plaintiff failed to meet these requirements or demonstrate that an exception applied.

In support of his claim of exigent circumstances, Plaintiff submitted a Form DS-5525 ("Statement of Exigent/Special Family Circumstances") for each child, along with supporting documentation. Admin. R. STATE2-00124–27. According to Defendant, these materials appeared to assert exigency on three grounds: (1) that the children's health and safety were endangered while in their mother's care; (2) that Plaintiff was unable to contact the mother or the children following his most recent arrest; and (3) that Plaintiff's inability to obtain a visa valid for more than six months prevented him from securing employment in Japan. Suppl. Admin. R. STATE2-00121. Defendant concluded, however, that these circumstances did not excuse compliance with the two-parent consent requirement or the requirement that M.S. and S.S. appear in person. *Id*. STATE2-00121.

First, Defendant determined that Plaintiff's asserted exigency did not justify deviating from the two-parent consent requirement. Suppl. Admin. R. STATE2-00115 (citing 8 FAM §§ 502.4-2, 502.5-3), STATE2-00122 (same). It emphasized that, for the preceding three years, "the mother ha[d] consistently voiced opposition to the issuance of passports to the children." *Id*. STATE2-00115, STATE2-00122. Defendant viewed this as "the most important factor" in deciding whether to waive the rule. *Id*. STATE2-00115, STATE2-00122. Defendant explained that it remained in regular contact with the mother's attorney to monitor the children's welfare and the related legal proceedings. *Id*. STATE2-00116, STATE2-00122. According to Defendant,

the mother's attorney confirmed that the mother would not consent if Plaintiff intended to use the

passports to take the children to the United States, an intention Plaintiff had repeatedly expressed

to the agency. *Id*. STATE2-00122–23. With respect to the children's health and safety,

Defendant found Plaintiff's claims not credible, citing the Japanese Family Court's award of

physical custody to the mother. *Id*. STATE2-00115, STATE2-00122. Defendant stated that this

credibility determination was consistent with its prior assessments of Plaintiff's credibility in

connection with his earlier applications (e.g., when Plaintiff claimed he had no contact with the

mother but then contradicted himself by stating that they frequently spent time together). *Id*.

STATE2-00115, STATE2-00122. As for Plaintiff's asserted inability to contact the mother,

Defendant explained that she was residing in a local government facility for female victims of

domestic violence.[8] *Id*. STATE2-00114, STATE2-00121. In light of the local government's

---

[8] Certainly, the Court is aware of Plaintiff's disposition for making violent threats, as he has made such threats (some directed to this Court) throughout this litigation and as recently as February 2026, a month before the issuance of this opinion. *See, e.g.*, ECF No. 122 at 9 ("Be assured bullets in the heads of a bus load of Japanese will ensure Mr. Stone's memory will remain with the children forever. And if this court lets this matter comes to that, then so be it."); ECF No. 121 at 7–8 ("Scott Renner and his asshole buddies have destroyed [Plaintiff's] life and the life of his children . . . . Renner should know if [Plaintiff] ever had an opportunity for personal contact[,] [Plaintiff] would kill him on the spot."); ECF No. 88 at 5 ("If Japan deports me[,] I will get an AR15 [and] 9mm handgun, full body Kevlar, acrylic face shield, [and] storm a Jap tourist bus where they segregate themselves, at tourist locations, Hollywood, Honolulu, etc. 60-80-100 of them. No jury would convict me."); ECF No. 54 at 3 ("The last time Plaintiff ha[d] to confront Japan's immigration officers, he told them bring guns and be prepared to kill him, because he will kill as many of them as he can first, before they kill him."); *see also Stone I*, ECF No. 238 at 4–5 (Plaintiff stating that he "wishes nothing but suffering and death to [Judge] Contreras, and his immigrant family"); *id.* ECF No. 210-1 (Plaintiff emailing the Court stating "IT WOULD TAKE AN ARMY TO PULL ME OFF OF YOU . . . . I WISH YOU GREAT SUFFERING AND THE GREATEST PSYCHOLOGICAL AND PHYSICAL PAIN POSSIBLE FOR YOUR ENTIRE FAMILY."); *id.* ECF No. 169 at 3 ("Plaintiff used to be appalled at the acts of people like Timothy McVeigh, but now, every time Plaintiff sees a federal officer assaulted, or killed . . . it brings a warmth to Plaintiff's belly, and a smile on Plaintiff's face. Plaintiff hopes the federal employees who suffered the loss of their children in that 'attack,' continue to suffer to this day, and the last image in their mind before they die, is having to

determination that both the mother and the children were appropriately housed there, Defendant concluded that it "would be perverse" to excuse the two-parent consent requirement based on Plaintiff's inability to contact the mother when that inability stemmed from his own conduct. *Id.* STATE2-00115, STATE2-00122. For these reasons, Defendant determined that a deviation from the two-parent consent rule unwarranted.

Second, Defendant concluded that Plaintiff's asserted exigent circumstances did not fall within the narrow category of cases in which the agency excuses the in-person appearance requirement. According to Defendant, as reflected in the Foreign Affairs Manual and prior agency practice, the agency waives that requirement only in limited situations—namely, cases involving "medical urgency and necessity" where a child is in intensive care and requires documentation for an emergency medical evacuation to the United States. *Id.* STATE2-00114–15 (citing 8 FAM §§ 601.1-2, 601.1-1(B)), STATE2-00122 (same). Because Plaintiff's asserted circumstances did not meet that standard, Defendant declined to waive the children's personal appearance. *Id.* STATE2-00114–15, STATE2-00122. Defendant also rejected Plaintiff's claim that the children's health or safety was endangered in their mother's care—an allegation that, if substantiated, might have supported excusing the appearance requirement. *Id.* STATE2-00115, STATE2-00122. Defendant noted that Plaintiff had repeatedly expressed a desire to reconcile with his wife and relocate the family to Hawaii, which it viewed as undermining his assertion that the mother posed a danger to the children. *Id.* STATE2-00115, STATE2-00122. In addition, Defendant relied on the Japanese Family Court's decision awarding physical custody to the mother and permitting the children to remain in her care. *Id.* STATE2-00114–15; STATE2-

---

identify the mangled corpses of their dead children . . . . Japanese officials and the U.S. courts want a war with Plaintiff and a war they shall get.").

14

00121–22. Defendant stated that it had "no doubt with respect to the integrity of the Japanese judicial system" and trusted that custody determinations were made with appropriate consideration of the children's best interests.[9] *Id*. STATE2-00115, STATE2-00122. Accordingly, Defendant concluded that Plaintiff had not demonstrated circumstances warranting an exception to the in-person appearance requirement. Because Plaintiff neither obtained the mother's consent nor presented the children before the agency, and failed to establish that any exception applied, Defendant denied the applications. *Id*. STATE2-00114–16, STATE2-00121–23.

In denying Plaintiff's passport and CRBA applications, Defendant did not act arbitrarily and capriciously. Under the APA, "[a]gency action is arbitrary and capricious" and must be set aside "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency." *Mingo Logan Coal Co. v. EPA*, 829 F.3d 710, 718 (D.C. Cir. 2016) (internal quotation marks omitted); 5 U.S.C. § 706(2)(A). Although a court must ensure that "an agency's decreed result [is] within the scope of its lawful authority" and that "the process by which it reaches that result [is] logical and rational," the court is "not to substitute [its] judgment for that of the agency." *Id.* (citation modified). "Whether [the court] would have done what the agency did is immaterial; so long as the agency examined the relevant data and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made, [the court] will ordinarily uphold it." *Id.* (citation modified).

Both the two-parent consent and in-person appearance rules are "especially important in a custody dispute where parental abduction is a risk or has already occurred." *Stone I*, 2020 WL

---

[9] Of course, Plaintiff has disputed this throughout the course of his cases.

15

6701078, at *6 (citing 7 FAM § 1712.2(o)(1)); *see also id.* at *4 (citing 72 Fed. Reg. 10,095-01, 2007 WL 670067 (Mar. 7, 2007)). As this Court has explained before, "[a]n applying parent submitting a DS-5525 in lieu of the second parent's consent bears the burden of proof, and the standard is high." *Id.* at *10. Based on the record before it, Defendant reasonably determined that Plaintiff failed to meet that burden and adequately explained its reasoning. Specifically, Defendant concluded that Plaintiff's allegations did not satisfy the agency's narrow exceptions for waiving the two-parent consent or in-person appearance requirements. In reaching that determination, the agency relied on several record-supported considerations, such as: the mother's opposition to the issuance of passports for the children, *see e.g.*, Admin. R. STATE2-02267; the ongoing custody proceedings, *see e.g.*, *id.* STATE2-02238, STATE2-02322; the lack of credible evidence demonstrating that the children's health or safety was at risk in their mother's care, *see, e.g.*, *id.* STATE2-01131; Plaintiff's non-credibility and inconsistent statements, [10] *e.g.*, *compare id.* STATE2-00102–3 (Plaintiff indicating to Defendant he consents to M.S. travelling to Japan in November 2018), *with id.* STATE2-01071 (Plaintiff claiming children were abducted into Japan in November 2018); and the absence of any medical or travel-related emergency that would justify waiving the personal appearance requirement, *see generally id.* STATE2-001–109. The record also reflects that Defendant remained in regular contact with the mother's attorney and with Japanese authorities regarding the children's welfare and the status of the custody proceedings. *See, e.g.*, *id.* STATE2-01131, STATE2-01670–71. Both sources confirmed that the mother and children were safe. *Id.* at STATE2-01164. Moreover,

---

[10] Indeed, this Court has previously acknowledged that Plaintiff "contradicts himself so frequently" that it "would be hard-pressed to choose which version of [Plaintiff]'s factual narrative to accept as true." *Stone I*, 2020 WL 6701078, at, at *4 n.4; *see also id.* at *6 ("The record shows that [Plaintiff] contradicted himself repeatedly throughout his communications with Defendants.").

local authorities refused to disclose the mother's whereabouts to Plaintiff, presumably in light of the mother's allegations of abuse as well as the ongoing custody proceedings.[11] *Id.* STATE2-02188. Finally, Defendant noted that S.S. has never been in Plaintiff's custody. *Id.* STATE2-00114, STATE2-00121; *see also* Admin R. STATE-00539 (Plaintiff emailing State Department expressing doubt that S.S. is his biological son because his wife "is now FIVE MONTHS pregnant with a second child that may, or may not be [his]"). Defendant therefore sufficiently articulated the basis for its decisions, and the decisions are reasonable and supported by substantial evidence. Its explanations also demonstrate that the agency on remand meaningfully considered Plaintiff's new applications and the alleged changed circumstances. *See* Mem. Op. Denying in Part Def.'s Mot. Summ. J. at 18–19 (noting previously that although Plaintiff submitted new applications and alleged changed circumstances, the administrative record did not reflect that the agency had considered those allegations or that the rationales offered in Defendant's briefing were the bases for the denials).

To the extent Plaintiff disputes the agency's factual determinations, that disagreement does not render the decision arbitrary and capricious. When reviewing agency action, a court does not ask whether the record might support the plaintiff's preferred interpretation of the evidence, but rather whether the record supports the agency's ultimate decision. *Florida Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010). And under the APA, the agency, not the reviewing court, has the responsibility to resolve factual issues based on the

---

[11] Plaintiff appears to acknowledge that the children had been housed in a "safe house" at a certain point because of Ms. Suzuki's allegations that Plaintiff made threats toward the children. Admin. R. STATE2-02261. Relatedly, a State Department staff member who spoke with Plaintiff expressed similar safety concerns, stating they were "worried about the child's safety as [Plaintiff] sounds erratic" and "[i]t's possible the wife or wife's family have already contacted the police." *Id.* STATE-0036.

administrative record. *See Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (explaining that the court's role is to determine whether "the evidence in the administrative record permitted the agency to make the decision it did"). So long as the final agency decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," a court will affirm. *Genesis HealthVentures of Naugatuck, Inc. v. Leavitt*, 563 F. Supp. 2d 170, 177 (D.D.C. 2008) (quoting *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 619–20 (1966)). As noted above, the relevant evidence here meets that threshold and adequately supports Defendant's decisions.[12]

Nevertheless, Plaintiff now maintains that, since October 2019, Defendant "knew" Plaintiff had sole custody of his child M.S. based on a purported custody settlement or hearing held at Sendai Family Court on April 15, 2019. *See* ECF Nos. 120, 122; *see also* ECF No. 137-1 (January 2026 declaration alleging that a Sendai Family Court written decision indicated that Ms. Suzuki agreed to a custody settlement and that Plaintiff had custody of M.S.). Plaintiff also contends that a November 2018 agreement between him and Ms. Suzuki also established that he

---

[12] At least one court considering a similar challenge to the State Department's refusal to issue a passport and waive the two-parent consent requirement concluded that the plaintiff was unlikely to succeed on the merits. *See White v. Pompeo*, No. 18-5434, 2019 WL 1875524, at *2 (E.D. Pa. Apr. 25, 2019) (concluding that a parent's challenge to the State Department's refusal to issue a passport at the U.S. Embassy in Tokyo was unlikely to succeed where the other parent withheld consent, the Tokyo Family Court had awarded that parent legal custody, and where the applicant failed to show any time-sensitive exigency or that the child's health, welfare, or safety was in jeopardy). Another court under similar circumstances concluded that a plaintiff's allegations of parental abduction were likely insufficient to overcome the State Department's in-person appearance requirement. *See Raia v. Pompeo*, 455 F. Supp. 3d 7, *15 (E.D.NY. 2020) (where both parents were awarded sole custody of the child by different tribunals, Plaintiff's allegations that the mother had abducted the child to Italy did not require the State Department to waive the in-person appearance requirement despite Plaintiff's contention that it was "impossible" for him to satisfy that requirement).

had sole custody over M.S. ECF No. 122 at 9. But Plaintiff's assertions are belied by the record and his own filings.

Plaintiff's Form DS-5525, which he submitted in January 2022, indicated that "[n]o" "court, either in the United States or abroad, ever issued an order/decree that references the custody or travel of the child." Admin. R. STATE2-00003. Instead, Plaintiff's Form DS-5525 noted that "[e]mergency custody proceedings" were "pending" in Florida state court. *Id*. Moreover, in October 2019, Plaintiff represented to this Court that on April 10, 2019, Ms. Suzuki had initially agreed to terms granting Plaintiff "sole custody" of M.S., with the understanding that the agreement would be consummated through mediation in the Sendai Family Court. *Stone I*, ECF No. 45-2 ¶ 69. According to Plaintiff, "[t]hese terms were never finalized, however." *Id*.; *see also id.* ¶ 9 (Plaintiff indicating that he started mediation proceedings in Sendai Family Court on April 15, 2019, which Ms. Suzuki abandoned); *id*. ECF No. 80 ¶ 15 (Plaintiff explaining that his attorney "drew up divorce terms that [his] wife and her attorney had agreed to," which would have given him sole custody, but that his wife ultimately "did not finalize the matter"). [13] In the record, Plaintiff's May 2019 correspondence similarly indicates that the purported custody settlement was ultimately rejected and never formalized. *See* Admin R. STATE-0541 (Plaintiff stating that "[a]t the Sendai Family Court, my wife had agreed for me to return to the U.S. with my son, and then changed her mind," that "[Ms. Suzuki] filed action in Sendai Family Court to have [M.S.] returned to her," and that "Sendai Family Court has no jurisdiction"). Indeed, Plaintiff has stated that the Sendai Family Court had at one point ordered custody of M.S. in

---

[13] Plaintiff made these statements in declarations signed under penalty of perjury. Local Civil Rule 5.1(f) and 28 U.S.C. § 1746 provide that a court may rely on an unsworn declaration "where the declarant signs the declaration under penalty of perjury." *Downs L. Grp., P.A. v. U.S. Coast Guard*, No. 21-2407, 2023 WL 4744044, at *7 (D.D.C. July 25, 2023) (quoting *Yanofsky v. U.S. Dep't of Com.*, No. 19-2290, 2022 WL 2980344, at *3 (D.D.C. Mar. 31, 2022).

favor of the mother. ECF No. 63.  Further, the purported November 2018 agreement that Plaintiff claims establishes his sole custody does not, in fact, do so. Rather, the document states that Ms. Suzuki "ha[s] equal custody of [their] minor child [M.S.]" and reflects her purported consent to family law jurisdiction in the United States. *See* Admin. R. STATE-0101. The agreement, however, does not otherwise confer sole custody to Plaintiff.[14] Indeed, Plaintiff has himself characterized the November 2018 agreement as such. *See Stone I*, ECF 102 at 11, 31 (Plaintiff citing the November 18 agreement and stating that "My wife signed a waiver to any divorce, custody or abduction related proceedings to be held in Japan or under Japanese law, but instead . . . under both federal and state law in the United States.").

Therefore, Plaintiff's own statements and the record squarely contradict his belated assertion that the Sendai Family Court recognized his claim to sole custody of M.S. or that the November 2018 agreement established such custody. That assertion thus provides no basis to invalidate Defendant's decision. *See Ark Initiative v. Tidwell*, 64 F. Supp. 3d 81, 100 (D.D.C.

---

[14] Plaintiff filed a motion alleging that the undersigned judge should recuse himself from hearing this matter because the Court purportedly "ignore[ed] the April 15, 2019 Child Custody Settlement," as well as the undersigned judge's "bias in favor of his former client, the Department of State (DOS)." *See* ECF No. 144. Plaintiff's motion derives in part on his assertion that the purported April 2019 settlement established his sole custody, but as explained above, that assertion is contradicted by Plaintiff's own statements and the record. As to Plaintiff's allegations of purported bias, this Court has addressed those concerns before. *See* Mem. Op Den. Pl.'s Mot. Recusal, *Stone I*, ECF No. 189. As stated previously, "[a]lthough I represented the Department of State while a practicing lawyer, I never worked on this case." *Id*. at 4; *see also McKee v. U.S. Dep't of Justice*, 253 F. Supp. 3d 78, 81 (D.D.C. 2017) (denying motion to recuse where judge "once worked at the Department of Justice, but . . . left the Department over fifteen years [previously] and had no involvement of any kind with this case or the predicate facts"), *aff'd*, 2018 WL 1388575 (D.C. Cir. Feb. 21, 2018) (per curiam)). As before, Plaintiff once again "points to no specific facts that support his claim of bias . . . . [T]he only evidence he marshals to back his allegations is from this Court's actions in his case." Mem. Op. Den. Pl.'s Mot. Recuse at 4. Judicial rulings alone, however, "almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 55 (1994)). Accordingly, this Court denies Plaintiff's motion.

2014) (concluding that government action was not arbitrary and capricious where plaintiff's challenge to the action was belied by the administrative record), *aff'd*, 816 F.3d 119 (D.C. Cir. 2016).

Plaintiff's objection to Defendant's denials also stem from his disagreement with separate proceedings in Japan concerning the custody of the children, as well as his incarceration by Japanese authorities. *See, e.g.*, ECF No. 122. But, as this Court has previously explained, this case arises under the APA and concerns only Defendant's denial of a CRBA for S.S. and U.S. passports for both children. *See* Min. Order (July 23, 2025). The Japanese custody proceedings and Plaintiff's incarceration in Japan therefore involve issues distinct from those presented here, and this case is not the proper vehicle for challenging those matters. *Id*. Nevertheless, Plaintiff repeatedly asserts that Japanese authorities acted improperly in the custody proceedings, suggesting that Defendant erred by relying on, or crediting, those proceedings in evaluating his applications. *See, e.g*., ECF No. 103. But the Court's role in this APA action is limited to reviewing whether Defendant's decision was arbitrary and capricious and supported by the administrative record. *See Ashton v. United States Copyright Off.*, 310 F. Supp. 3d 149, 156–57 (D.D.C. 2017) (discussing the APA standard of review). The Court is not positioned to adjudicate the validity or integrity of foreign judicial proceedings or to resolve a broader dispute regarding Japan's handling of international child custody matters. Those questions implicate sensitive issues of foreign relations that are committed primarily to the political branches. *See, e.g.*, *Regan v. Wald*, 468 U.S. 222, 242 (1984); *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 845 (D.C. Cir. 2010). Accordingly, Plaintiff's attempts to relitigate the Japanese custody proceedings, or to challenge Japan's role in alleged international abductions, as well as his incarceration, fall outside the scope of this APA action. The Court therefore confines its

review to the agency decisions before it and declines to entertain Plaintiff's broader challenges to the Japanese proceedings.

To reiterate, the Court concludes that Defendant's re-denials of Plaintiff's passport and CRBA applications were not arbitrary and capricious. Because Plaintiff's claim regarding the issuance of a Social Security number to S.S. is necessarily intertwined with his CRBA application, as a CRBA is a necessary predicate to the issuance of a Social Security card, that claim likewise fails.[15] *See Stone I*, No. 19-3273, 2020 WL 6746925, at \*7 n.7 (D.D.C. Nov. 16, 2020), *aff'd*, No. 20-5360, 2021 WL 2255016 (D.C. Cir. May 17, 2021); *see also* 20 C.F.R. § 422.107(d)(5) (stating that a Social Security number application requires proof of U.S. citizenship, which, for a foreign-born applicant, can be shown through a CRBA). Accordingly, the Court grants Defendant's Motion for Summary Judgment and dismisses this case.

## V. CONCLUSION

For the foregoing reasons, Defendant's Renewed Motion for Summary Judgment (ECF No. 67) is **GRANTED**; Plaintiff's miscellaneous motions (ECF Nos. 99, 126, 127, 130, 131, 132, 135, 136, 140, 141, 142, 144) are **DENIED**; and Defendant's Motion for Extension of Time to Respond to ECF Nos. 126–133 (ECF No. 138) is **DENIED** as **MOOT**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 30, 2026                                                  RUDOLPH CONTRERAS
                                                                        United States District Judge

---

[15] In any event, Defendant—the State Department—does not issue Social Security numbers; that function is reserved to the Social Security Administration (SSA). *See, e.g.*, 42 U.S.C. § 405(c)(2)(B)(i); 20 C.F.R. §§ 422.103(b)(1), (c).